McCALEB, Justice.
 

 This is a suit for workmen’s compensation. Plaintiff, an automobile mechanic, suffered a back injury on December 1, 1955 during the course and scope of his employment with Williamson Motors, Inc. of Vivian, Louisiana when the weight of a motor block assembly, which he was engaged in loading into the trunk of an automobile, was shifted onto his left leg and back. Despite the fact that he experienced considerable pain in his lower back, plaintiff continued to work until December 7th, at which time, he visited Dr. H. W. Garrett of Vivian for treatment. A complete physical and
 
 *217
 
 clinical examination was made by the doctor and, on December 16th, he reported to the compensation insurer of plaintiff’s employer (the other defendant in the case) that plaintiff was suffering from an acute back sprain and spasm of the left recti muscles. On January 18, 1956 the doctor sent another report to the insurer which disclosed office visits of plaintiff on December 7, 9, 12, 15 and 26, 1955 and on January 15, 1956. This report set forth that plaintiff had been discharged on January 15th but indicated that the patient still complained of soreness in the region of the left inguinal canal.
 
 [1]
 

 Meanwhile, about a week after the accident, plaintiff was discharged by Williamson Motors, allegedly for talking to customers and loafing on the job. On January 2, 1956, he obtained similar employment, as an automobile mechanic, with Blaine Chevrolet Company of Jefferson, Texas and commuted some 60 miles each day by automobile from and to Vivian, where he lived, and his place of employment. When plaintiff applied to the Blaine Company for this position, he deliberately withheld information concerning his prior injury because (according to his testimony) he felt that a disclosure would prevent him from securing employment.
 

 On March 20, 1956 plaintiff returned to Dr. Garrett for treatment to his back. Another examination was made and, in his report to defendant insurer, the doctor again stated his findings of acute back sprain and spasm of the left recti spine muscles. At the trial, the doctor testified that, prior to this visit, he was of the opinion that plaintiff had recovered sufficiently to assume his duties but he felt sure that the accident in December was still the cause of plaintiff’s suffering; that the back injury had progressed to a herniation of a disc at the fifth lumbar level and that the initial injury would later result in a protrusion of the disc. In view of this diagnosis, Dr. Garrett secured an appointment for plaintiff with Dr. Roy King of Shreveport, Louisiana, an orthopedic specialist. However, plaintiff never kept the appointment due to a lack of communication as to the time thereof.
 

 On May 2, 1956, Dr. Garrett submitted a surgeon’s final report and bill to defendant insurer for the March 20th visit, stating that the case had been reopened on that date and it was concluded under the heading “Remarks” that “Patient did not return for further treatment, we presume he recovered”.. No mention was-made in this report of the-, fact that plaintiff had been referred to Dr. King but Dr. Garrett explains in his testimony that this was unnecessary as Dr. King would undoubtedly submit a direct report to defendant.
 

 After working hours on June- 15, 1956, plaintiff was salvaging some automobile.
 
 *219
 
 tires which had been discarded by his employer at Jefferson, and experienced a “catch” in his back while picking up one of the inner tubes. Severe pain ensued and, on June 17th, he consulted Dr. Garrett, who made findings similar to those of March 20th and again referred plaintiff to Dr. King, the orthopedic specialist. The latter examined plaintiff on June 22nd and on the same date mailed his findings to defendant insurance company. Dr. King diagnosed the injury to be a protruding intervertebral disc at the fifth lumbar level and put plaintiff in a Williams type back brace. Shortly thereafter, plaintiff was forced to quit his job at Blaine Chevrolet Company. He was examined and treated by Dr. King on several occasions up to and including November 12, 1956 and is unquestionably suffering from a ruptured disc, which admittedly has totally and permanently disabled him from doing work of any reasonable character.
 

 'The theory of plaintiff’s case is that his present condition is solely attributable to the accident of December 1, 1955, when he received the back injury due to the shifting onto his body of the heavy motor assembly block.
 

 Defendánts’ position is that plaintiff was only incapacitated five weeks as a result of the accident of December 1, 1955; that he returned to work for another employer and performed his duties successfully and without pain until June 15, 1956, when he had another accident, which was wholly disconnected with the first one, and that, in such circumstances, no further recovery can be had for the first occurrence.
 

 The district judge rejected plaintiff’s demand and his judgment was affirmed by the Court of Appeal, Second Circuit. That tribunal reached the conclusion that, where an employee has sustained an injury, which does not initially render him totally incapacitated to do work of reasonable character and he demonstrates, following the injury, that “ * * * he was able to and did without pain, discomfort or handicap, perform the same work continuously for six months, * * * ”, he will not be considered disabled from that injury, even though he subsequently became totally disabled, notwithstanding the opinion of medical experts that the disability is solely attributable to the original accident. See La.App., 96 So.2d 238, 241. We granted certiorari to review this ruling.
 

 From the foregoing statement of the history of plaintiff’s injury it is seen that this case presents for decision a single-question of fact — whether plaintiff’s present permanent disability is attributable to the injury he sustained on December 1,, 1955 while in the employ of Williamson Motors, Inc.?
 

 An examination of the record makes an affirmative conclusion inescapable. First and foremost, the medical testimony is un
 
 *221
 
 qualified that plaintiff sustained a herniated intervertebral disc as a result of the accident of December 1, 1955; that this injury was of such a nature that the disc was liable to protrude or rupture in the ordinary course of events, irrespective of plaintiff’s activity; that the occurrence of the rupture on or before June 15, 1956 was the expected consequence of the original injury and that the protrusion could have happened at any time, even while •plaintiff was combing his hair or brushing his
 
 teeth.
 

 [2]
 

 Confronted with this unanimity of medi'cal opinion, defendants sought to offset its effect by the evidence of various employees who worked with plaintiff at the Blaine Chevrolet Company in Jefferson. These men testified that plaintiff performed his 'work efficiently and that he never complained of pain before the incident of June 15, 1956, when he suffered a “catch” 'in his back in reaching for an inner tube. However, the statements of these witnesses are general in their nature and none could .recall specific instances of stooping or lift-ting by plaintiff. .
 

 On the other hand, the Service Manager '.of the Blaine Company stated that he noticed that plaintiff walked stiffly, which .indicates to us that he was protecting his injured back. Plaintiff testified that he -suffered more or less continuously since the accident of December 1, 1955 and this is corroborated by the statement of his wife. A friend, Thurman A. Crow, who shared a car pool with him, stated that plaintiff had complained of his back on .many occasions and that he noticed during trips to and from work that plaintiff was uncomfortable. This evidence, we think, is confirmed by the history of plaintiff’s case showing that, after being discharged by Dr. Garrett, he returned to the doctor for further treatment on January 15th and "March 20, 1956.
 

 The Court of Appeal found that the testimony of Drs. King and Garrett was entitled to little, if any, probative value. With respect to Dr. King, it was declared that his opinion was largely predicated on plaintiff’s statement to him of back pain since the December 1st accident — an unproven fact — as this witness admittedly was unable to-testify that plaintiff was actually hurt on December 1, 1955 or on some other date. As to Dr. Garrett, the Court apparently rejected his'testimony because he had on two occasions, given reports to the ■insurance company that plaintiff was no longer disabled from the injury of December 1, 1955.
 

 
 *223
 
 In our view, neither one of these reasons justifies the refusal to accord due weight to the medical evidence. Expert evidence should not be disregarded unless it has no substantial basis or is founded on an incorrect assumption of facts. See 32 C.J.S. Evidence § 569c. Dr. King’s testimony was based on proven facts. There is no dispute as to the fact of plaintiff’s injury on December 1, 1955, and the clinical history of his case is likewise an admitted fact.
 

 Insofar as Dr. Garrett’s evidence is concerned, we find his statement convincing. While it is true that he did indicate in two of his reports to the insurance company that he thought that plaintiff had recovered, he revised these findings, as would 'be expected of a conscientious physician, when 'confronted with additional facts and 'circumstances.
 

 Nor can we agree with the Court of Appeal in its legal conclusion that an employee totally disabled as a result of an initial injury is to be denied compensation because he returned to work following the ■ injury and was able to perform the ■duties of his' employment apparently without pain or handicap.
 

 The issue for determination in a compensation case of this type is whether the disability of the employee has causal connection with the injury he sustained. When it is shown to have causal connection, the employee, who has instituted his suit within two years from the date of the •accident (see R.S. 23 :1209), as in this case, is entitled to recover. Mottet v. Libbey-Owens Ford Glass Co., 220 La. 653, 57 So.2d 218 and Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522. The fact that the employee has experienced pain, while performing similar work subsequent to the accident, is a strong circumstance to be taken into consideration in determining whether there is causal connection between the accident and the ensuing disability. But the failure of the employee to establish that he suffered pain during the performance of the subsequent work (a state of facts which we doubt is applicable to this case for we, unlike the Court of Appeal, believe plaintiff’s evidence that he experienced pain ever since the December 1, 1955. accident) does not of itself preclude recovery of compensation when the preponderating expert testimony (in this case the uncontradicted medical opinion) sustains the employee’s claim that his disability emanates from the injury received in the accident. Indeed, there have been instances of two accidents, the last of which ' produced permanent disability, where both employers, the first and the second, have been held responsible for compensation benefits. See White v. Taylor, La.App., 5 So.2d 337 and Brock v.
 
 *225
 
 Jones & Laughlin Supply Co., La.App., 39 So.2d 904. In these cases it was found from the facts that the first accident was the initial cause and the second accident the contributing cause, both of which combined to produce the claimed disability.
 

 Finding that defendants are liable for compensation, there remains only to consider plaintiff’s claim for penalties and attorney’s fees provided by R.S. 22:658, as amended and reenacted by Act 125 of 1958. These penalties and reasonable attorney’s fees are assessable only when the failure of a defendant to pay is found to be arbitrary, capricious and without probable cause.
 

 Under the facts of this case, we do not feel that there is justification for penalizing defendants. The reports of Dr. Garrett through May 2, 1956 indicated that plaintiff did not suffer permanent disability. This, together with the circumstance that he worked continuously for six months following the accident, gave defendants reasonable ground, we think, for litigating the question of whether he was entitled to additional compensation.
 

 The judgment of the district court, which was affirmed by the Court of Appeal, is therefore reversed and it is now ordered that there be judgment herein in favor of plaintiff, Roy E. Finley, and against the defendants, Hardware Mutual Insurance Company and Williamson Motors Inc., in solido, for compensation at the rate of $30 per week commencing June 15, 1956 for the duration of his disability, not exceeding 400 weeks, and subject to a credit of five weeks already paid, with interest at the rate of 5% per annum on each past due installment from its due date until paid.
 

 It is further ordered that all accrued amounts with interest from the due date on each installment at the said rate, until paid, be paid in a lump sum and that the fee of the attorneys for plaintiff be fixed and approved at a sum equivalent to 20% of the amount collected under this judgment, provided that the maximum attorney’s fee shall not exceed the sum of $1,-000, said fee to be paid out of the award made to plaintiff.
 

 It is further ordered that plaintiff have judgment against defendants, in solido, for the sum of $280.90, for medical expenses, and the right to bring suit against defendants for future medical expenses occasioned by this injury is reserved to him. All costs are to be paid by defendants and the right is reserved to plaintiff to have expert witness fees taxed as costs in appropriate proceedings.
 

 [1]
 

 . Acting upon the report of Dr. Garrett, the insurance company paid plaintiff five weeks compensation, or from December 14, 1955 through January 17, 1956.
 

 [2]
 

 . Dr. King testified, in part: “I believe on December 1st he received a rather severe injury to his back when he was lifting a motor, which was heavy. . It slipped. He felt a snap. That in my opinion was a severe-injury, • The stoop- . ing over to pick up an innertube on June I5th, I believe, was * * * he could' " have, just as well been brushing his. teeth,' at home.”