REID, Judge.
This is an action for a declaratory judgment brought by the City of Bogalusa and its compensation insurance carrier against General Accident, Fire & Life Assurance Corporation, a former insurance carrier of the City of Bogalusa and Julius Flynn, a former employee of the City of Bogalusa in which they seek a determination of whether or not, The Employers Liability Assurance Corporation, Ltd., or General Accident, Fire & Life Assurance Corporation, or both of them, are liable for whatever compensation benefits may be due the employee, Julius Flynn, as a result of his alleged injury.
The record shows Julius Flynn was employed by the City of Bogalusa at its tile plant and while so employed he injured his back on October 18, 1957 while moving some extremely large drainage tile. He was paid 18 weeks compensation benefits by General Accident, Fire‘& Life Assurance Corporation in the amount of $630.00 and medical bills in the amount of $858.80. By the end of February or early March 1958, Julius Flynn returned to his employment. On September 16, 1958 he sustained an alleged second injury and since that time has allegedly been paid compensation by The Employers Liability Assurance Corporation, Ltd. The facts also show the insurance carrier of the City of Bogalusa the date of the alleged second accident was The Employers Liability Assurance Corporation, Ltd., who has succeeded the General Accident, Fire & Life Assurance Corpotion as of November 1, 1957.
On October 15, 1959 the plaintiffs, The Employers Liability Assurance Corporation, Ltd., and the City of Bogalusa, filed a petition for a declaratory judgment against General Accident, Fire & Life Assurance Corporation, in which they alleged that despite the fact that Julius Flynn had returned to work in February, 1958 he had continued to complain of his back and on September 16, 1958 the discomfort was so acute that he was required to leave his employment and seek further medical attention. Plaintiffs further alleged although the employee was discharged by the physician on December 10, 1958, he continued to complain of his back and made demand against Employers for compensation benefits. They further allege that although not admitting liability, and with full reservation of their rights, and in order to avoid penalties,[1] Employers made weekly payments of compensation and furnished medical attention to the employee pending a determination of liability.
Exceptions of no cause and no right of action and prescription were filed by General Accident and exceptions of no cause and no right of action were filed by Julius Flynn. All the exceptions were sustained by the District Court and on appeal to this Court, La.App., 125 So.2d 689 said judgment of the District Court, sustaining the exceptions, were reversed and the case was remanded for trial. After remand the defendant, General Accident, filed an answer denying liability. Defendant Julius Flynn filed an answer and reconventional demand praying for attorney’s fees in the amount of $5000.00. On November 6, 1961, for written reasons assigned, the Trial Court rendered judgment as follows:
“IT IS ORDERED AND DECLARED that General Accident Fire *427 & Life Assurance Corporation, Ltd., and The Employers’ Liability Assurance Corporation, Ltd. are solidarily liable, as insurers, to the City of Bo-galusa for any compensation benefits and for any medical, surgical, or hospital expenses the City of Bogalusa may owe to Julius Flynn by reason of an accident or injury alleged to have occured in September of 19S8;
“TT IS FURTHER ORDERED AND DECLARED that General Accident Fire & Life Assurance Corporation, Ltd., and The Employers’ Liability Assurance Corporation Ltd., are liable in solido for any and all workmen’s compensation benefits, medical, surgical, or hospital benefits to which Julius Flynn may be held entitled under the Louisiana Workmen’s Compensation Act by reason of the alleged accident or injury in September, 1958;
“TT IS FURTHER DECLARED that this Court finds that as of November 6, 1961, The Employers’ Liability Assurance Corporation, Ltd., has paid $576.56 in medical expenses on behalf of Julius Flynn and compensation has been paid to Julius Flynn in the amount of $35.00 a week for 163 weeks and 5 days for a total in weekly compensation benefits of $5,734.17, and The Employers’ Liability Assurance Corporation, Ltd., is therefore entitled as of November 6, 1961, to receive one-half of the total expenditure or $3,155.36 from General Accident Fire & Life Assurance Corporation, Ltd., with legal interest thereon until paid.
“TT IS FURTHER ORDERED, ADJUDGED AND DECREED that the reconventional demand of Julius Flynn be dismissed as premature;
“TT IS FURTHER ORDERED, ADJUDGED AND DECREED that General Accident, Fire & Life Assurance Corporation, Ltd. pay all costs of court herein.”
From this judgment General Accident, Fire & Life Assurance Corporation perfected this appeal. Julius Flynn was granted a suspensive and devolutive appeal but said appeal was not perfected and therefore was abandoned.
On January 10, 1962 the plaintiffs filed an answer to the appeal praying that the judgment be affirmed, except that it be amended to declare General Accident solely liable to the City of Bogalusa for compensation benefits and for all medical, surgical and hospital expenses due Julius Flynn by the City of Bogalusa, and for judgment against General Accident for the full amount of compensation benefits paid by The Employers.
The position of plaintiffs in this case is based on the proposition that the injury to the employee for which they are paying compensation was the result of an accident which occurred on October 18, 1957 while the defendant General Accident was the compensation insurance carrier of the City of Bogalusa, no accident occurred on September 16, 1958, but alternatively if one did occur on September 16, 1958 it did not cause the condition from which the employee is suffering. Plaintiff Employers further contends the employee went back to work without having fully recovered from his injury of October 18, 1957; his back was still painful though improved, but it was not sufficiently improved to withstand the strain of his employment and that “exacertation” on September 16, 1958 was not an additional accident but the foreseeable consequence of going back to work with an injured back. In support of this position plaintiffs rely upon the testimony of Dr. Harrell, who was the attending physician, and Dr. Llewelyn, a neurosurgeon who examined the employee.
The position of the defendants is that the employee Julius Flynn had recovered from his injury suffered in September of 1957 when he returned tó work the latter part of February or early part of March, 1958, and that from the time of his return to work un *428 til his injury in September of 1958 he was not disabled and was fully able to perform the same duties that he had performed prior to his injury and that the present alleged disability resulted from the second accident of September 16, 1958. In support of its position the defendants rely upon the testimony of the employee Julius Flynn and of his fellow workers.
An examination of the testimony of the employee, Julius Flynn, clearly shows that he returned to work the latter part of February or early part of March, 1958; that he had no trouble with his back after he returned to work until the second accident of September 16, 1958; he performed the same duties from March until September, 1958 that he had performed prior to the first accident in October of 1957; that his back, although sore from a hard day’s work, was no more sore during the period that he worked from March 1958 to September, 1958 than it had been prior to his first accident in October of 1957. He further testified that he' had a second accident in September of 1958. An examination of the employee’s testimony is quite revealing. He testifies as follows:
“Q: According to the records that I have seen, you were discharged to go back February 24, 1958 but you say you actually went back to work in March?
"A: Yes.
“Q: As I understand from the history that you have given, even after you went back to work, while you were considerable better, you still had some difficulty with your back, is that correct?
“A: No mam, no trouble after I went back to work in March.
“Q: You had no trouble at all?
“A: No.
“Q: If Dr. Llewlyn in his report says that you told him that you continued to have minor episodes of pain in your back after you went back to work, if he reported that, he is wrong?
“A: I told him I was sore after a hard day’s work but my back didn’t bother me but I was sore.
“Q: You mean you didn’t have acute pain ?
“A: No, it would be sore after a hard day’s work.
“Q: Then I understand that in September you did have acute pain?
“A: Yes.
“Q: September, 1958?
“A: Yes. That is when I had the second accident.
“Q: You received treatment in September, 1958 when you reported this severe attack?
“A: Yes.
“Q: But you were not hospitalized then were you?
“A: Yes, in the Medical Center.
“Q: How long were you in the hospital ?
“A: I think it was a week.”
He further testified as follows:
“Q: Mr. Flynn, from the time that you returned to work in February or March of 1958, until the time of your injury in September, 1958, some several months later, did you work every day?
“A: Yes sir, every day.
“Q: What were your duties then, during that time, what type of work did you do?
“A: What I done every day?
“Q: Yes, from March of 1958 until you were injured in September of ’58?
*429 “A: I shovel two yards of gravel, a yard of sand, and toted 26 sacks of cement out of that house to the mixer and lowered the big tile with the chain belt and that was my day’s work.
“Q : That cement that you moved, how did you move it?
“A: In my arms. I would go get a sack in my arms and come out the door to the mixer. It wasn’t too far. I would say 30 or 40 feet.
“Q: And you would physically carry that cement out there ?
“A: Yes sir.
“Q: What approximately is the weight of a sack of cement?
“A: Ninety four pounds.
“Q: And how many of those would you move that distance in the course of a day?
“A: Twenty-six.
“Q: How much sand ?
“A: I shoveled two yards of gravel and a yard of sand every day.
“Q: And when you say you shoveled, you picked it up and lift it over?
“A: I would take a shovel and put it ■ in the mixer.
“Q : And then what else ?
“A: I had to pull all the cores out of the tile before we set it and lower the big tile on the floor where we could roll them out.
“Q: Do you know what is the weight of that core that you say you had to pull?
“A: Some of them is different in the size. Some of them weigh 100 pounds but I pulled them with a chain block.
“Q: Is that the same type of work that you were doing prior to your injury in 1957?
“A: Yes sir.
“Q: Were you physically able to carry on all the duties of your job from March, 1958 until the time of your injury in September of 1958?
“A: Yes sir.
“Q: Did you have any physical disability or physical limitation on your work or about your person from March, 1958 until the time of your injury in September, 1958?
“A: You mean had I lost any time from work?
“Q: Yes, or did you suffer any pain?
“A: No sir, no more than when I would do a hard day’s work when I would get off I would be sore, but that is natural, that would make any man sore.
“Q: Before your injury in 1957 at the close of a day of that kind which you have described, would you then have soreness of any discomfort in your back?
“A: Yes sir, my back would be sore. Naturally stooping over and shoveling gravel, and toting that heavy cement. It would be gone the next morning.
“Q: Was that before your 1957 injury even ?
“A: Yes sir. I never could get used to the job. It would always be sore and in the morning it would be gone.
“Q: And did you suffer any pain or have any disability other than that soreness you say late in the evening from March 1958 until *430 you were injured in September, 1958?
“A: No sir.”
It should be emphasized that at the time of the filing of the present suit the employee was being paid compensation and that he could not in any manner prejudice himself by the testimony that he gave at the trial and it must be assumed that his testimony was truthful. There is no question but that this testimony by the employee should be given great weight as to his condition between March, 1958 and September 16, 1958, and as to his ability to perform the same duties that he had performed prior to the accident of October 1957.
In addition to the testimony of Mr. Flynn, Mr. Alvin Wheat, a co-worker of Mr. Flynn’s testified at the time of the alleged second accident of September 16, 1958 Mr. Flynn ran a mixer, handled gravel and cement and was able to perform his duties. Mr. Wheat also testified there had been a second accident in September of 1958.
Mr. Howerd Eugene Phillips, another coworker of Mr. Flynn’s testified as follows:
“Q: Did you see Mr. Flynn almost daily ?
“A: While I worked there, every day, yes sir.
“Q: Did he work every day?
“A: Yes sir.
“Q: Were each of you engaged in physical work, that is lifting etc. ?
“A: Yes sir, in other words we worked shoulder to shoulder.
“Q: Did Mr. Flynn carry on his end of the work?
“A: Yes sir.
“Q: What did that consist of?
“A: In other words he was the mixer operator. He put the cement in the mixer and shoveled sand and gravel and also when we were getting ready to pour we pulled the forms down and he helped us set them up and pull the cores and take the tile down and roll them off the floor.
“Q: Did he work at that every day?
“A. Yes sir, every day.
“Q: Were you at the tile plant at the time he was injured in September, 1958?
“A: Yes sir.
“Q: Did you see him at, or shortly after his injury on that date?
“A: I was on the lower end of the platform down there where the 42 inch tile was. We were pouring it and the mixer was running and Mr. Wheat emptied his wheel barrow and started back and heard him call—
“BY MISS MAYER: I object to hearsay evidence.
“BY MR. JONES: Just tell what you saw.
“A: I come down there and I saw Mr. Flynn laying on his back and some water just outside the door with a sack of cement laying across his stomach. * * * . We picked him up and put him in the car and carried him home.
“BY THE COURT: That was in September, 1958?
“A: Yes sir.”
As above mentioned the plaintiffs depend upon the testimony of two doctors to substantiate their claim that the employee’s condition resulted from the injury he sustained in October of 1957. It should be emphasized that in this case the purpose of the doctors’ testimony was to determine when the injury occurred, rather than to *431 determine the actual physical disability of the employee.
The deposition of Dr. Raeburn C. Llew-elyn shows he examined the employee twice, first on December 22, 1958, and again on April 9, 1959 at the request of counsel for the employee. Although counsel for plaintiffs in her brief indicates Dr. Llewelyn’s testimony is consistent with the view the employee’s complaints represented continuing evidence of a disability caused by the accident of October 18, 1957, it is difficult to read any such opinion out of Dr. Llewelyn’s testimony. Dr. Llewelyn did not see the patient until two months after the second accident and was unable to make a neurosurgical diagnosis to account for the patient’s injuries, although he was impressed with the objective evidence of a low back syndrome. But, in regard to the question at issue, he could only state the employee’s history, as related by him, implied the employee was not free of back pain during the interim between the injury of October 1957 and September, 1958, and the fact that the episode of October 1957 was so protracted, lasting from October until February indicated there must be some relationship between the two. It should be pointed out that Dr. Llewelyn’s opinion is based upon the history as related to him by the employee; and as shown by the cited portions of the testimony of the employee, Julius Flynn, merely indicated to Dr. Llewelyn that he had a sore back after a day’s work.
The other doctor upon whose testimony the plaintiff based its position was Dr. W. S. Harrell of Bogalusa who was the attending physician at the time of both accidents. Dr. Harrell testified that it was his opinion the employee had an unstable back due to the injury of 1957 and although he went back to work he was not capable to perform his strenuous duties. However, in giving the medical history of the employee from the time of the first accident on October 18, 1957, through his various visits until February 24, 1958 at which time he discharged the employee to return to work, he did not see the employee again until September 16, 1958. It can be seen by an examination of Dr. Harrell’s testimony that although he saw plaintiff at various intervals between October 18 and February 24, 1958 and from September 16, 1958 through December 1958, he has no record of any complaint made by the employee concerning his back during the time in which the employee was performing his duties from the date of his return to work after the first accident until the second accident. In view of the positive testimony of the employee that he was able to perform his duties after his return to work from the first accident, not much weight can be given to the position of Dr. Harrell that as far as he knew the employee was never able to perform the same work that he performed prior to the first accident.
The Trial Judge, after reviewing the testimony, concluded employee’s condition resulted from the cumulative effect of two accidents and although the employee had recovered sufficiently to return to work in March of 1958, as a result of the heavy work he was required to perform “he injured his back again or aggravated the previous condition and brought on a recurrence of his ailment or injury and the injury of September, 1958 was an additional accident but an accident that aggravated a pre-existing condition and brought on a recurrence of the pre-existing condition.”
In order to reach this conclusion, it is apparent the Trial Judge must have accepted the testimony of the two doctors and rejected the testimony of the employee, Julius Flynn, and his co-workers.
In view of the positive testimony of the employee Julius Flynn (which testimony is fully corroborated by that of his fellow workers) to the effect that he was fully recovered and able to perform all his duties from the time of his return to work and that there was a second accident, it is difficult to see how the Trial Judge rejected this testimony and accepted the *432 weak and indefinite testimony of the medical experts who were testifying as to the causal connection between the two injuries, based upon the history given by the employee. It is true Dr. Harrell made the statement he felt the employee was unable to perform his duties after his return to work from the first accident, but this was in fact a supposition on the part of Dr. Harrell and is not borne out by the testimony of the employee, and is, in fact, refuted by Dr. Harrell’s own medical records which show the employee was not seen by him from the time he was discharged in February of 1958 to return to work until September 16, 1958, the time of the second alleged accident.
An examination of the record in this case leads this Court to believe the weight of the evidence is against the plaintiff insurer, and Employers has failed to make out its case by preponderance of the evidence as it is required to do. American Indemnity Company v. Newsom, La.App., 79 So.2d 392; Edwards v. Aetna Casualty and Surety Co., La.App., 108 So.2d 126; A. Squyres v. Western Casualty and Surety Co. et al., La.App., 107 So.2d 837.
The situation herein is analogous to that set forth in Mitchell v. Travelers Insurance Company, La.App., 136 So.2d 143, wherein the question was raised whether or not an employee could recover compensation after an accident resulting in the re-occurrence of an old injury from which he had been disabled by a prior accident and 'for which he had been paid compensation under a compensation agreement. In the Mitchell case the plaintiff sustained a herniated intervertebral disk in 1956 at which time a compromise was confected by the employee, Mitchell, and the insurer of his 1956 employer based upon the employee’s claim of total and permanent disability. The employee finding himself symptom free in October of 1958, approximately eight months before the second accident, returned to oil field work and successfully performed heavy manual labor until the second accident. The second employer contended the present disability was not caused by the second accident of July 19, 1959, but stemmed from the first accident of 1956. One of the Orthopedists, who testified for defendant, felt the employee’s condition was residual from the first or 1956 injury and the Orthopedist, who testified for the employee, indicated the employee’s condition could have resulted from an aggravation from the second injury. The Court relied upon the uncontra-dicted testimony of the employee and two of his co-workers that he was symptom free prior to the second accident and held that the second accident was the cause of the employee’s disability. The Court in the Mitchell case also quoted from the Trial Judge’s opinion:
“Since the plaintiff actually worked as a roughneck for several months immediately before the accident in July 1959, it would be difficult to hold that he was unable to do that kind of work during the period that he was actually doing it, and therefore any disabling injury that he was now suffering from, if any, would necessarily have to stem from the second accident.”
Thus, in the Mitchell case we have almost the same factual situation as in the case at issue. There is little doubt under the ruling of the Mitchell case, had Julius Flynn, instead of returning to his employment with the City of Bogalusa after his first accident, gone to work for another employer and sustained his injury of September 16, 1958, he would have recovered from the second employer. See also Castee v. Great American Indemnity Company, La.App., 81 So.2d 101.
None of the cases cited by the defendant are in point and without discussing all of them in detail it should be noted that Stansbury v. Ocean Accident & Guarantee Corporation, Ltd., La.App., 52 So.2d 300, and Finley v. Hardware Mutual Insurance Company, 237 La. 214, 110 So.2d 583, two *433 of the cases cited by the defendant can be distinguished.
In the Finley case, supra, there was a preponderance of medical evidence to the effect that the plaintiff’s injury was directly related to the first accident and, in addition, plaintiff, as well as other witnesses, testified to the effect that plaintiff suffered pain while working and during a portion of the period that he was working for his second employer he was being treated for the injury he suffered in the first accident.
The record in the Stansbury case, supra, clearly shows plaintiff at the time of his return to work was unable to perform the same duties he had performed prior to the first accident and had returned to work merely for the convenience of the employer and he was unable to do the heavy manual work that he had been able to do prior to the first accident.
It is not essential to the matter at issue, however, it should be pointed out that although the Trial Judge rendered a money judgment against the defendant, General Accident, Fire & Life Assurance Corporation, for compensation and medical expenses paid by Employers there is no proof in the record as to the amount of compensation, or medical expenses paid. The record does disclose plaintiff was paid compensation but there is no proof as to the amount of this compensation.
Therefore, it is the opinion of this Court the employee, Julius Flynn was, at the time of the second accident symptom free from the disability which he incurred at the time of his first accident and was performing the same duties at that time that he performed prior to his injuries in September of 1957. The employee’s present alleged disability resulted from the second accident which occurred on September 16 of 1958, and Employers Liability Assurance Corporation, Ltd., as the insurer of the City of Bogalusa at the time of the second accident, is solely liable for any compensation that might be due the said Julius Flynn.
For the foregoing reasons it is therefore, Ordered, Adjudged and Decreed that the judgment of the Lower Court be reversed insofar as the solidary liability of the General Accident, Fire & Life Assurance Corporation is concerned and judgment be rendered in favor of the defendant, General Accident, Fire & Life Assurance Corporation, and against the plaintiffs, rejecting plaintiffs’ demands against the said defendant, and decreeing plaintiff, The Employers Liability Assurance Corporation, Ltd., alone liable as insurers to the City of Bogalusa for any compensation benefits and for medical, surgical or hospital expenses the City of Bogalusa might owe Julius Flynn by reason of the accident, or injury, alleged to have occurred in September, 1958. All costs of court and this appeal to be borne by the plaintiff, The Employers Liability Assurance Corporation, Ltd.
Reversed in part and rendered.

. This is in compliance with the direction of the Supreme Court in Humphreys v. Marquette Casualty Co., 235 La. 335, 1 So.2d 895, wherein the Court held that where there was a dispute between in-surors as to which was hablo to the employee, the employee should be paid by both or either insurer under pain of penalties.