DIXON, Judge.
In the district court there was judgment in favor of plaintiff in this workmen’s compensation case. The defendant employer appealed, and plaintiff answered the appeal, pursuing his demands for penalties and attorney’s fees.
Will Winters alleged two accidents; the defense is that the first accident prescribed and the second accident was not proved to a legal certainty.
Plaintiff, approximately sixty years of age, was employed as a handyman around the Civic Center. His suit was filed May 17, 1965. He alleged a fall from a ladder on December 31, 1964. After an answer was filed, plaintiff filed an amended petition on May 3, 1966 alleging in the alternative a fall at the Civic Center on December 23, 1963, which manifested itself in January of 1965. The case was partly tried on June 2, 1966 and continued for the taking of medical testimony. A stipulation dated October 20, 1966, containing medical reports, was filed on February 9, 1967.
Also filed on February 9, 1967 was an exception of prescription, in which the City contended that the record showed that plaintiff’s injury “manifested itself” more than one year prior to the filing of the suit, “in that it is specifically alleged and shown that plaintiff consulted and was treated by his physician on or about December 28, 1963.”
Plaintiff’s counsel withdrew from the case in March of 1969. With new counsel, the case was again fixed for trial before the successor to the judge who tried the case originally. On March 28, 1969, evidence was adduced relating to the plea of prescription, after which the district court rendered judgment in favor of plaintiff on May 21, 1969 for $35.00 a week for four hundred weeks, plus certain medical expenses and costs. Plaintiff’s demands for penalties and attorney’s fees were rejected.
The evidence showed that plaintiff injured himself when he slipped and fell at work on December 23, 1963. His left hip struck the sharp edge of some steps. Plaintiff was bedridden with pain in his left hip and leg for two days; on the third day he was hospitalized and referred by the treating physician to an orthopedic surgeon. The medical report showed a narrowing of the fourth lumbar intervertebral disc space, but because of the “severely localized pain” and the contusion directly to the sciatic nerve, the physician prescribed conservative treatment for the injury. The plaintiff was hospitalized about two weeks, and the City continued to pay his salary without interruption. After he returned to work in the first part of 1964, it was noted by his supervisors that “he was limping.”
It is undisputed that Will continued to have difficulty as a result of the fall in December, 1963 throughout the subsequent year. The evidence is clear and convincing. There is nothing in the record, however, to indicate that the plaintiff was unable to do the work to which he was assigned. As far as the record shows, his employment was uninterrupted until after New Year’s Eve of 1964.
Plaintiff testified that on December 31, 1964, he was on a ladder taking down a piece of wire at about eleven o’clock in the morning. He became overbalanced and tried to jump off the ladder but fell “on *868 that hip and the misery looked to me like it went to the same place that first one was.” Since it was only a short time until noon, when the plaintiff and his fellow employees were to leave for the holiday, and since the supervisor who had instructed the plaintiff to report any accident to him was not present, the plaintiff did not make any report of this injury. The City relies on the testimony of fellow employees (who were not present at the time of the accident, but who spoke to Will on the way home) to show that the plaintiff made no complaint of injury. Plaintiff does not contend that he either reported the injury when it happened, or complained of pain, before reaching home.
On reaching home, the plaintiff sought the comfort of a hot bath to ease his back. The next day he was urged by his wife to attend church, but he was unable to stay until the end of the service. On the first Monday after the accident, plaintiff instructed his wife to inform his employer of his condition; plaintiff’s wife delegated this responsibility to a grandchild. The word received by plaintiff’s supervisor was that the plaintiff was ill. Plaintiff sought medical treatment, was hospitalized and was given conservative treatment. A hospital employee telephoned plaintiff’s supervisor to request an “accident report.” An orthopedic surgeon was called in and immediately diagnosed the injury as a ruptured disc between the fourth and fifth lumbar vertebrae, and recommended immediate surgery. This surgeon, Dr. W. W. Fox, had treated Will Winters in association with Dr. Ray E. King after the accident in December of 1963. Dr. Fox said that this was the first occasion on which he had recommended surgery immediately after an examination. He testified that the plaintiff was in such pain that it was hardly possible to obtain a satisfactory history from him at the time of the examination.
Surgery was performed; a ruptured intervertebral disc was removed and a hemilaminectomy was performed. The medical evidence and the testimony of the plaintiff and his witnesses established that the plaintiff has been continuously disabled since the accident of December 31, 1964. The defendant makes no contention that the plaintiff recovered sufficiently to return to his former employment.
The trial court found as a fact that plaintiff’s disability was caused by the 1963 accident. Dr. Fox testified that, in his opinion, the severely ruptured disc resulted from the fall in December, 1963 and that continuing the “ordinary activities of life” and any subsequent injury would have aggravated the injury received in December of 1963. Dr. King testified that the symptoms exhibited by the plaintiff in December, 1963 were consistent with those resulting from a herniated intervertebral disc.
The defendant’s brief dwells principally upon the contentions included in the specification of error, in which the defendant complains that the plaintiff failed to prove to a legal certainty that he sustained a ruptured disc as the result of an accident during the course and scope of his employment. Defendant argues the elementary proposition that the burden is on the plaintiff to prove by a reasonable preponderance of the evidence the accident, the injury, and the subsequent disability caused by the injury.
However, the evidence concerning the relationship between plaintiff’s disability and the accident in December of 1963 is overwhelmingly convincing. All the evidence was available to the defendant long before the trial of this case. The argument advanced by the defendant in its plea of prescription is contrary to principles well established in the jurisprudence. As was stated in Finley v. Hardware Mutual Insurance Company, 237 La. 214, 110 So.2d 583, 586:
“The issue for determination in a compensation case of this type is whether the disability of the employee has causal connection with the injury he sustained. When it is shown to have causal connection, the employee, who has instituted his suit within two years from the date *869 of the accident (see R.S. 23:1209), as in this case, is entitled to recover. Mottet v. Libbey-Owens Ford Glass Co., 220 La. 653, 57 So.2d 218 and Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522.”
The causal connection between the plaintiff’s disability and the injury suffered on December 23, 1963 has been established by the plaintiff by more than a reasonable preponderance of the evidence. The only evidence pointed to by the defendant as creating any doubt as to the causal connection is the interpretation of one answer of Dr. Fox to a question from the judge. Dr. Fox’s testimony, fairly interpreted, meant that, in the absence of an adequate history of the plaintiff’s activities subsequent to the first injury, he would be unable to give an opinion about whether the injury continued to manifest itself in the interval, or whether it became “completely dormant.” Dr. Fox’s other testimony made it clear that there was, in his opinion, a causal connection between the injury of December 23, 1963 and plaintiff’s disability.[1]
We have been unable to adduce from the evidence or from the arguments presented by defendant how the defendant reasonably expected to avoid payment of compensation to the plaintiff. In such cases, R.S. 23:1201.2 subjects the employer to penalties and reasonable attorney’s fees. A failure to pay an amount for which the employer is undoubtedly liable is an arbitrary or unreasonable failure under the act. Finn v. Delta Drilling Company, La.App., 121 So.2d 340. When the law is clear, and the employer knows or should know it, but nevertheless fails to pay according to its obligations, the failure to pay is “not founded on just and reasonable grounds, which is essential in order * * * to avoid the penalties prescribed * * *." Ayres v. New York Life Insurance Company, 219 La. 945, 54 So.2d 409.
Consequently, the defendant will be cast for penalties in the amount of 12% of all sums past due and owing to the plaintiff, in addition to reasonable attorney’s fees, which we fix at $1500.00.
For these reasons, the judgment of the district court is amended and affirmed, and there is now judgment herein in favor of the plaintiff, Will Winters, and against the defendant, City of Shreveport, awarding the plaintiff, Will Winters, workmen’s compensation at the rate of $35.00 per week beginning January 1, 1965, for the duration of his disability, not to exceed four hundred weeks, with interest at the rate of 5% per annum on each past due installment from its due date until paid, and a penalty of 12% of the total amount of the claim past due and unpaid, and the sum of $1500.00 for attorney’s fees, all at the cost of the defendant-appellant, City of Shreveport. In all other respects the judgment of the district court is affirmed.

. “Q Was the nature of the injury of a recent origin or would you say, in your opinion, that it was an injury that had been there for some time?
“A Well, he probably had had difficulty since he fell a year before and he may have re-aggravated it, but when you see a disc this severe, this bad, without any history of /iolent trauma like a fall from two stories or a car wreck or something like that, well, it had been going on a long while.”

“Q Based on your examination of Mr. Winters, as well as his history, do you have an opinion based on reasonable medical certainty as to the cause or at least the contributing cause of this ruptured intervertebral disc?
“A In my opinion this had been going on quite some time and he probably injured this disc the year before in the fall at the Civic Center and it was probably re-aggravated with any activity from then on.” (Testimony of Dr. W. W. Fox, Record, pages 86-87).