CARAWAY, J.
|, In these consolidated workers’ compensation actions an employee seeks benefits from his two former employers based upon claims that he received work-related knee *14 injuries during the course and scope of his employment with each. The workers’ compensation judge (“WCJ”) awarded temporary total disability benefits from the time of plaintiffs second accident through the trial (and thereafter). The WCJ found the two employers solidarily liable however, for only the three-month period immediately following the second accident, assessing benefits thereafter against the first employer. Both the employee and the first employer appeal. Finding error in the WCJ’s ruling concerning the second employer, we reverse.

Facts

Samuel Silverman (“Silverman”) filed separate disputed claims for workers’ compensation against his employer, Weather-ford International, Inc. (“Weatherford”) and his prior employer, BJ Services Company (“BJ Services”) on June 23, 2009. The cases were consolidated.
Against Weatherford, Silverman alleged that he fell and hyper-extended his left knee on March 12, 2009, during the course and scope of his employment. Silverman claimed that the added weight of a piece of heavy equipment unexpectedly released by a co-worker pulled him forward, causing him to fall to his knees and bend his left leg beneath his body. Silverman alleged that this accident aggravated a preexisting condition that resulted from an injury he sustained while employed by BJ Services on July |⅞2, 2005, when a crane operator prematurely released a cement head which pinned Silverman’s left knee between two pieces of equipment.
Silverman had his first left knee surgery, a partial ACL tear repair, in 1990 and numerous other surgeries prior to 2005. Silverman had another knee surgery following the BJ Services accident. In 2006, Silverman began seeing Dr. Steven Atchison as his primary orthopedic physician. Dr. Atchison performed two left knee arthroscopic surgeries on Silver-man in 2007. He continued to experience pain, “locking” and “give-way” episodes, but was able to work. Silverman indicated that his knee had “given-out” 50-100 times between July 2005 and March 2009. During some of these episodes his knee would bruise and swell. Over the course of his treatment, Dr. Atchison diagnosed Silver-man with an ACL deficient knee.
Silverman began working for Weather-ford in 2007. He reinjured his knee in a home accident in the summer of 2007 which caused him to take a two-three month leave from work. On August 4, 2008, Atchison referred Silverman to ACL specialist, Dr. Googe, for “possible [ACL] surgical evaluation.” Silverman however was not evaluated by Dr. Googe and returned to work.
On March 12, 2009, immediately after the Weatherford accident, Dr. Atchison saw Silverman and diagnosed him with a deficient ACL. In his deposition testimony, jointly entered into evidence by the parties, Dr. Atchison stated, “Mr. Silver-man’s on-the-job injury of March 12 is an aggravation of his July 2, 2005 on-the-job injury.... I think, just like you have stated, that there is a — this is just another event in a long line of events |sthat has led up to, stemming from, leading back, to this July 2, 2005.” Dr. Atchison again referred Silverman to Dr. Googe who evaluated Sil-verman on April 17, 2009, and recommended ACL surgery.
Dr. Cambize Shahrdar was appointed by the court and conducted an independent medical exam (“IME”) on March 25, 2010. Dr. Shahrdar also recommended ACL surgery and concluded that Silverman’s “knee diagnosis (ACL tear) is as a result of his two work related knee injuries.” His deposition testimony consistently reflected that the 2005 accident partially tore the ACL and caused knee instability that was *15 present in March of 2009. He believed that the March 12, 2009 fall completed the ACL tear and that the March 12, 2009 fall aggravated Silverman’s pre-existing July 2005 injury.
Weatherford initially paid compensation benefits and medical expenses for four weeks following the accident. The payments were terminated after a nurse employed by Weatherford, who provided medical assistance to Silverman on March 12, 2009, issued a report concluding that Silverman’s injury was related to a prior injury that never resolved. Subsequently, Silverman began these proceedings against B J Services and Weatherford.
Prior to trial, Silverman and B J Services allegedly entered into a partial settlement in which BJ Services agreed to approve medical treatment and pay indemnity benefits in return for Silverman’s waiver of any claim for penalties or attorney fees against BJ Services. This partial settlement is not a part of the record before us. However, consistent with the parties’ Ldescription of the settlement, BJ Services has not appealed the WCJ’s judgment holding it responsible under the Act for Silverman’s present disability.
In a pretrial statement, BJ Services stipulated with Silverman to the fact that there was a July 2, 2005 accident which resulted in a compensable injury. BJ and Silverman further stipulated the following:
[T]hat plaintiff sustained an accident and aggravation to his preexisting condition/injury to his left knee during the course and scope of his employment with Weatherford International, Inc. on March 12, 2009 and/or the injury(s) of March 12, 2009 combined with his previous knee injury to cause an increase in his disability which precluded his return to employment with Weatherford International, Inc.
At trial, Silverman and his supervisor testified consistently with the facts set forth above. Additionally, Weatherford presented the testimony of a field investigator and the Weatherford nurse who rendered medical assistance to Silverman on March 12, 2009. Trial testimony indicated that Silverman has not been able to return to any full-time employment since the March 12, 2009 injury. He described his knee as “totally unstable” from which he experiences greater pain.
The WCJ signed a judgment on September 9, 2010, and made the following findings:
• Silverman did sustain a compensable accident on March 12, 2009 which resulted in a temporarily disabling injury to his left knee.
• Silverman was temporarily totally disabled between March 12, 2009 and June 12, 2009 for which BJ Services and Weatherford were held liable, in solido, for three months of medical and indemnity benefits.
• The weekly benefit to which Silverman is entitled from March 12, 2009 through June 12, 2009 is $546.00.
Is* Silverman is entitled to receive temporary total disability benefits after June 12, 2009, from BJ Services Company at $438.00 per week.
• Weatherford is to be credited for the benefits already paid.
• B J Services was solely responsible for Silverman’s continuing disability, beyond June 12, 2009, as a result of the July 2, 2005 accident, as well as for any corrective surgery on the plaintiffs knee that was injured in that accident.
• The court denied Silverman’s claims against Weatherford for attorney fees and penalties holding that the claim was reasonably controverted by the parties.
*16 Silverman and BJ Services appeal from this judgment.

Discussion

Silverman’s principal argument in this appeal is that the workers’ compensation judge arbitrarily ruled that his work-related injuries ended after three months despite its apparent finding of the combined work-related accidents. Related to this argument, both BJ Services and Silverman assert that the court gave greater weight to Dr. Bilderback’s opinion over the opinions of Dr. Atchison and Dr. Shahrdar and that Dr. Shahrdar’s opinion should be treated as prima facie proof of Silverman’s condition. Silverman and BJ Services also contend that the WCJ erred in finding that Silverman failed to satisfy his burden of establishing a causal relationship between the disability and the March 12, 2009 accident.
A claimant who seeks workers’ compensation benefits on the basis that he is temporarily totally disabled must prove by clear and convincing evidence, without taking pain into consideration, that he is unable to engage in any employment or self-employment. La. R.S. 23:1221; Bolton v. Grant Parish School Bd., 98-1430 (La.3/2/99), 730 So.2d 882; Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993). A workers’ compensation claimant has the burden of proving, by a preponderance of the evidence, that the disability suffered is related to an on-the-job injury. Scott v. Super One Foods, 45,636 (La.App.2d Cir.9/29/10), 48 So.3d 1133; Modicue v. Graphic Packaging, 44,049 (La.App.2d Cir.2/25/09), 4 So.3d 968; Taylor v. Columbian Chemicals, 32,411 (La.App.2d Cir.10/27/99), 744 So.2d 704.
A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689; Dombrowski v. Patterson-UTI Drilling Co., 46,249 (La.App.2d Cir.4/13/11), 63 So.3d 308; Koenig v. Christus Schumpert Health System, 44,244 (La.App.2d Cir.5/13/09), 12 So.3d 1037; Hatfield v. Amethyst Const., Inc., 43,588 (La.App.2d Cir.12/3/08), 999 So.2d 133, writ denied, 08-2996 (La.2/13/09), 999 So.2d 1150. The preexisting condition is presumed to have been aggravated by the accident if the employee proves: (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the activation of the disabling condition. Peveto, supra; Dombrowski, supra; Koenig, supra. Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that pit is more probable than not that the work injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Peveto, supra.
In the case of two work-related accidents with separate employers, both of which are contributing causes of the ultimate disability, the employers and their insurers at the time of the accidents may be solidarily liable for the payment of compensation. Finley v. Hardware Mut. Ins. Co., 237 La. 214, 110 So.2d 583 (1959). This jurisprudential rule of solidarity is not specifically addressed in the Workers’ Compensation Act (the “Act”).
In Finley, the plaintiff was injured in 1955 while working for Williamson Motors, Inc., when the weight of a motor block *17 assembly shifted onto his leg and back. In 1956, while working for Blaine Chevrolet Company, the plaintiff was again injured while lifting an inner tube in the course of tire salvage. Citing this court’s opinion in White v. Taylor, 5 So.2d S37 (La.App. 2d Cir.1941), the court found both defendants solidarily liable for compensation benefits.
In White, the claimant sustained back injuries while loading brick into a wheelbarrow while at work. Two days later, while working for a subcontractor, the claimant twisted his back, seriously aggravating the injury. The court concluded that because it took “a combination of the two accidents to totally disable” the claimant, both employers were solidarily liable.
In the more recent jurisprudence of this Court, the rule of solidary liability has been expressed as follows:
IsWhen a combination of work-related accidents causes a disability, or where by virtue of a second accident a prior injury is aggravated causing disability, both the subsequent employer and the employer at the time of the first work-related accident are solidarily liable for compensation benefits and medical expenses.
Tron v. Little Italiano, Inc., 38,556 (La.App.2d Cir.6/25/04), 877 So.2d 1055; Hill v. Manpower-Collier Investments, 30,444 (La.App.2d Cir.4/8/98), 712 So.2d 560.
The legislature has set up a Second Injury Fund in La. R.S. 23:1371-1379. This fund provides workers’ compensation benefit reimbursement protection to the second employer when the second employer hires an employee who has had a compen-sable accident in the past that is likely to be aggravated by future work. Specifically, La. R.S. 23:1371 states in pertinent part as follows:
A.It is the purpose of this Part to:
(1) Encourage the employment, re-employment, or retention of employees who have a permanent, partial disability.
(2) Protect employers, group self-insurance funds, and property and casualty insurers from excess liability for workers’ compensation for disability when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone.
B. Except as provided in R.S. 23:1378(A)(6), this Part shall not be construed to create, provide, diminish, or affect in any way the workers’ compensation benefits due to an injured employee. The payment of compensation to an injured employee under this Chapter shall be determined without regard to this Part, and the provisions of this Part shall be considered only in determining whether an employer or his insurer is entitled to reimbursement from the Workers’ Compensation Second Injury Fund herein created.
C. As used in this part, the merger of an injury with a preexisting permanent partial disability is limited to the following:
(1) The subsequent injury would not have occurred but for the preexisting permanent partial disability; or
|s(2) The disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, and the employer has been required to pay and has paid additional medical or indemnity benefits for that greater disability.
Factual findings in workers’ compensation cases are subject to the manifest *18 error or clearly wrong standard of appellate review. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Dombrowski, supra; Koenig, supra. To reverse a fact-finder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993); Dombrowski, supra; Koenig, supra.
Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart, supra; Dombrowski, supra; Koenig, supra. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, supra; Dombrowski, supra; Koenig, supra.
The opinion of the treating physician should be accorded greater weight than that of a physician who sees the patient only once or twice. Fuentes v. Cellxion, Inc., 44,914 (La.App.2d Cir.12/16/09), 27 So.3d 1045; Kendrick v. Solo Cup, 44,303 (La.App.2d Cir.6/3/09), 15 So.3d 295. However, the treating physician’s testimony is not irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. Fuentes, supra; Kendrick, supra. The opinion of the IME physician is prima facie evidence of the claimant’s condition. La. R.S. 23:1123.
Before any review of the medical testimony, we agree that the WCJ’s ruling contains a fatal inconsistency. On the one hand, the WCJ recognized the jurisprudential rule of solidary liability for the two employers when the multiple work-related accidents combined and Silverman’s prior injury was aggravated, causing him to be unable to work. That rule, as reflected in the legislature’s definition of “merger” in La. R.S. 23:1371(C), does not attempt to weigh any difference in the disabling impact of the two injuries and apportion the workers’ compensation responsibility of the two employers accordingly. Both employers are solidarily bound. Nevertheless, and on the other hand, the WCJ arbitrarily ended Weatherford’s liability for workers’ compensation benefits after three months even though Silverman remained disabled. Again, from the legislative implication of the definition of the “merger of an injury” which creates the second employer’s responsibility, it does not matter that “the subsequent injury would not have occurred but for the preexisting permanent partial disability.” The combined accidents, with the injury of the latter aggravating the preexisting injury, result in both employers being responsible thereafter for benefits under the Act.
Next, we do not find Dr. Atchison’s testimony contradictory concerning his conclusion that the second accident at Weath-erford_|_ncontributed to Silverman’s knee dysfunction that caused him to be disabled from working after March 12. The contradiction which the WCJ attempted to articulate in the written ruling apparently stemmed from the WCJ’s erroneous legal conclusion which discounted the aggravating injury at Weatherford. Additionally, Dr. Shahrdar clearly found that the March 12, 2009 accident aggravated the preexisting medical condition.
The Act’s concern for wage benefits means that the principal focus in this case is that Silverman was employed for over *19 two years before the Weatherford accident and not disabled from earning wages. Yet, after the accident, Silverman cannot earn wages. This is the “objective worsening” which matters most in this case, and it began as the result of the Weather-ford work-related accident. Neither employer, in the lower court or on appeal, has challenged Silverman’s continuing disability preventing him from working. Indeed, the WCJ’s judgment recognizes Silver-man’s continuing entitlement to temporary total disability wage benefits from March 12, 2009, through the present.
Accordingly, the ruling of the WCJ ending Weatherford’s liability under the Act after three months was error. The judgment is amended to reflect that both employers are responsible for the medical and wage benefits under the Act since March 12, 2009.
Finally, Silverman contends that the workers’ compensation judge erred in failing to award penalties and attorney fees against Weatherford for its termination of benefits.
La. R.S. 23:1201(1) provides as follows:
l1?Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.
For purposes of imposition of attorney fees for discontinuance of workers’ compensation benefits, “arbitrary and capricious behavior” consists of willful and unreasonable action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41; Crochet v. Barbera Chevy-Chrysler Co., Inc., 04-1390 (La.App.1st Cir.6/29/05), 917 So.2d 49. Whether a refusal to pay is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Williams, supra. The crucial inquiry is whether the employer had articu-lable and objective reasons for denying or discontinuing the benefits at the time it took that action. Id.
Our reversal of the WCJ’s ruling for an accident which occurred during the Weath-erford employment is based upon the established law regarding multiple employment-related accidents. We therefore find Weatherford’s discontinuance of wage benefits arbitrary. The law afforded Weath-erford contribution rights from BJ Services and/or the Second Injury Fund, yet it chose to cut off benefits. Accordingly, we award a penalty in 113the amount of $1,000 and attorney fees in the amount of $6,000 for this action.

Conclusion

For the foregoing reasons, we reverse the WCJ’s judgment which limited Weath-erford’s liability to three months. Judgment is hereby rendered against Weather-ford, making it solidarity liable with BJ Services for temporary total disability benefits from March 12, 2009, and thereafter in the amount of $546 per week, and for all medical payments/treatments and any other benefits to which Silverman is entitled under the Act. We also reverse that portion of the judgment which denied penal *20 ties and attorney fees. Finding the termination of benefits by Weatherford to be arbitrary, we hereby award to plaintiff penalties of $1,000 and attorney fees in the amount of $6,000. Costs of this appeal are assessed to Weatherford.
JUDGMENT REVERSED AND RENDERED.
GASKINS, J., dissents with written reasons.
MOORE, J., concurs in part and dissents in part with written reasons.