DREW, J.
 

 11 Patter son-UTI Drilling Company (“Patterson”) and Liberty Mutual Insurance Company appeal a judgment awarding workers’ compensation benefits, assessing $4,000 in penalties, and awarding $10,000 in attorney fees. We modify the judgment to increase the award of attorney fees, and affirm.
 

 PACTS
 

 Robert Dombrowski, who has a history of low back pain and right leg pain, was hired by Patterson in April of 2008 after not working for several years.
 
 [1]
 
 Dombrow-ski, who has had at least five lumbar spine surgeries, began treatment with Dr. Yin-cent Forte of Louisiana Pain Care in July of 2007 for his lower back and right leg pain. When Dombrowski was interviewed for the job, he made Patterson aware of his history of back problems and was even asked if he could perform the heavy-duty job responsibilities.
 

 Dombrowski began working for Patterson in the position of floor hand on a drilling rig. After several months, he was promoted to the position of motorman on the rig. He was promoted to the position of driller following three months of working as a motorman.
 

 Dombrowski testified that his back problems did not interfere with his job or keep him from being promoted. Although he had been prescribed medications to alleviate the symptoms of his back condition, he would wait until after he stopped working to take his medications.
 

 | ¡.Dombrowski and the rest of his crew were laid off when the rig on which they were working was shut down. In December of 2008, Dombrowski accepted an offer to work as a motorman on another Patterson rig instead of receiving unemployment compensation. He worked a 12-hour shift on a seven-days-on/seven-days-off basis.
 

 On May 25, 2009, Dombrowski went to the emergency room (“ER”) at Citizens Medical Center with complaints of back pain that had started three days earlier when he lifted a board. The ER report reflects that he rated his pain as 6/10 or 7/10, arrived on a stretcher, and was in the “urgent” category for triage classification. Two Vicodin pills had not helped his pain. Dombrowski, who was not in a work-period at that time, returned to work as scheduled on May 27.
 

 
 *311
 
 Dombrowski alleged that he injured his back at work on May 28, 2009, when he lifted the end of a double-pin sub (the “accident”), which he estimated weighed-around 100 pounds, in order to slide a strap underneath it. Dombrowski recalled feeling a pop in his lower back which took his breath away. He also felt as if his right leg was on fire, and his right foot was numb.
 

 The rig’s tool pusher, James Browning, was standing about 10 feet away at the time of the accident. Dombrowski immediately let Browning know what had happened, and Browning told him to go to the office. Dombrowski testified that he also called the rig floor and told the driller that he was hurt. The rig’s safety representative was notified of the accident.
 

 Is An accident report was completed, which stated that Dombrowski felt a pop in his lower back when he bent over to tilt back a double-pin sub so he could place a strap under it. A post-accident drug screen taken 10 minutes after the accident was negative.
 

 The safety representative arrived at the rig office, and Dombrowski was then taken to Willis-Knighton Work Kare, which Dombrowski asserted was chosen by the safety representative. Dombrowski gave a history at Work Kare of bending over to lift up the end of a piece of equipment when he felt a pop in his low back, right side more than the left, and radiation down his right leg. Dombrowski was diagnosed with a low back strain and right radicular symptoms. He was restricted to light duties at work, given pain medications, told to use ice and heat as needed for discomfort, and instructed to do daily back stretches.
 

 Dombrowski claimed that after he left Work Kare, he was told by Patterson to return to the rig for the remainder of his shift. He also worked the next day doing light-duty work. Dombrowski was off work as normal the following week.
 

 Dombrowski returned to Work Kare for a followup visit on June 2, and he was released to work on that date. It was recorded on his chart at Work Kare that he had improvement in his back pain symptoms and intermittent persistent numbness in his right foot. He had also stopped taking his pain medications for two to three days. The diagnosis was low back strain with right radicular symptoms, improved.
 

 |4Dombrowski, who normally went to Dr. Forte’s office once a month, had been last seen at Dr. Forte’s office on May 20, 2009, for a medication review. He scheduled an appointment with Dr. Forte on June 4 because of the accident.
 

 Patterson fired Dombrowski on June 16, 2009. The reason given for his termination was that he was off work because of a previous injury.
 

 Dombrowski filed a disputed claim for compensation against Patterson and its insurer, Liberty Mutual Insurance Company. He also sought penalties and attorney fees.
 

 In its supplemental and amended answer, Patterson pointed out that Dom-browski failed to tell Dr. Forte about going to the ER on May 25, 2009. Patterson contended that Dombrowski withheld mentioning this to Dr. Forte in order to obtain a favorable determination from him that his current complaints were related to his alleged accident at work. Patterson argued that this was a material misrepresentation sufficient under La. R.S. 23:1208 to warrant a forfeiture of all benefits.
 

 The matter proceeded to trial, and the WCJ ruled that Dombrowski was temporarily and totally disabled from a work-related accident; was entitled to all rea
 
 *312
 
 sonable and necessary medical treatment for his work-related back injury, including epidural steroid injections recommended by Dr. Forte; and was entitled to weekly benefits of $546 dating back to May 28, 2009. The WCJ also assessed penalties of $4,000 against Patterson and ordered it to pay attorney fees of $10,000. Patterson appealed. Dombrowski answered the appeal seeking additional attorney fees.
 

 ^DISCUSSION
 

 Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review.
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840 (La.7/1/97), 696 So.2d 551. To reverse a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong.
 
 Stobart v. State, Department of Transportation and Development,
 
 617 So.2d 880 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
 
 Id.
 
 If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Id.
 

 Forfeiture of benefits
 

 Patterson first argues on appeal that the WCJ was manifestly erroneous in not finding that Dombrowski had committed fraud under La. R.S. 23:1208, which states, in part:
 

 A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
 

 [[Image here]]
 

 E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
 

 | fiLa. R.S. 23:1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized.
 
 Baker v. Stanley Evans Logging,
 
 42,156 (La.App.2d Cir.6/20/07), 960 So.2d 351,
 
 writ denied,
 
 2007-1817 (La.12/14/07), 970 So.2d 533;
 
 Slater v. Mid-South Extrusion,
 
 43,343 (La.App.2d Cir.8/13/08), 989 So.2d 252. Because statutory forfeiture of benefits under La. R.S. 23:1208 is a harsh remedy, it must be strictly construed.
 
 Risk Management Services v. Ashley,
 
 38,431 (La.App.2d Cir.5/14/04), 873 So.2d 942,
 
 writ denied,
 
 2004-1481 (La.9/24/04), 882 So.2d 1138. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits.
 
 Baker v. Stanley Evans Logging, supra; Slater v. Mid-South Extrusion, supra.
 

 Patterson contends on appeal that Dom-browski’s misrepresentations were not lim
 
 *313
 
 ited to Dr. Forte, but also included what he disclosed or failed to disclose at Work Kare to support his claim. Patterson points out that in the medical history form at Work Kare, Dombrowski checked a “No” box for prior back injury. Although Patterson admits that Dombrowski acknowledged having a ruptured disc and a prior back injury on the next 17page of the medical history form, Patterson adds that Dombrowski did not list which doctor was treating him. Finally, Patterson points out that in the May 28 treatment memo from Work Kare, it is written that Dom-browski had similar injuries in the past that had resolved after surgeries.
 

 We disagree with Patterson’s contentions. Nowhere in the Work Kare records is there any indication that Dombrowski was attempting to conceal or misrepresent his prior back problems. While he may have checked the “No” box when asked about prior back injuries on the medical history form, it is unclear why, if he intended to conceal his past back injuries, he would have acknowledged the prior back surgery and treatment for ruptured disc, as well as written on a subsequent page that he had missed work in the past because of a back injury. In addition, while Dombrowski did not name the doctor who performed the 2002 surgery, he listed the hospital in Thibodaux where it was performed.
 

 Dombrowski was questioned at trial why the doctor at Work Kare wrote that similar symptoms experienced by Dombrowski in the past had resolved after his surgeries. Dombrowski replied that the doctor had asked him about his prior back surgeries, but Dombrowski did not know why the doctor wrote that his back complaints had resolved. Patterson contends this note in the Work Kare records is contradicted by Dombrowski’s medical history since Dr. Forte treated him on a monthly basis for his back condition after his last surgery in 2007. Dombrowski believed that his condition was improving prior to the accident, but that he was never completely well. His medical history showed that he sometimes exhibited significant but | stemporarv improvement after surgeries. For instance, he told Dr. Thomas Donner in December of 2002 that he had minimal leg symptoms and his back was considerably better following a lumbar laminectomy. However, he was again exhibiting pain in 2007.
 

 The main thrust of Patterson’s fraud allegation is that Dombrowski’s failure to inform Dr. Forte of his May 25 ER treatment allowed Dr. Forte to relate the accident to his injury complaints. Patterson also contends that Dombrowski misled the doctor at Work Kare by not telling him about this ER visit.
 

 Dombrowski testified that the reason he went to the ER was to be treated for back spasms. He received a Toradol injection and his condition improved. He was able to return to work as scheduled on May 27 to begin a seven-day shift. He testified that he had no trouble doing his job on May 27, even though, as he remarked, the first day of a shift is usually the hardest. He also had no trouble doing his job on May 28; he had worked about four hours before the accident.
 

 Despite what the medical record from the ER shows, Dombrowski denied that he had had back complaints since May 22. He testified that he went to the ER as soon as the spasms started.
 

 Dombrowski stated that he never told Dr. Forte about the ER visit because Dr. Forte did not ask him about it. He also never mentioned it because it involved only low back spasms, not symptoms related to his prior back and leg ailments such as numbness and burning sensation. He never 1 ¡¡associated the pain after the accident
 
 *314
 
 with the muscle spasms that prompted him to go to the ER. He also felt fine when he returned to work on May 27.
 

 The WCJ’s decision to impose or deny forfeiture under La. R.S. 23:1208 is a factual finding which will not be disturbed on appeal absent manifest error.
 
 Brooks v. Madison Parish Service District Hospital,
 
 41,957 (La.App.2d Cir.3/7/07), 954 So.2d 207,
 
 writ denied,
 
 2007-0720 (La.5/18/07), 957 So.2d 155.
 

 The WCJ found Dombrowski to be very credible and felt that Patterson failed to present the court with a false statement made by Dombrowski. The WCJ stated that the allegation of fraud had the “characteristics of a sham” and was not acceptable as the basis for a forfeiture of benefits.
 

 We agree with the WCJ. The record does not show that Dombrowski ever made a false statement or representation in order to obtain benefits. His explanation for his failure to tell his physicians about the ER visit was reasonable. The WCJ was not clearly wrong in rejecting Patterson’s claim that Dombrowski committed fraud that necessitated a forfeiture of benefits.
 

 Accident & Causation
 

 Patterson further contends on appeal that the WCJ was manifestly erroneous in determining that Dombrowski had satisfied his burden of establishing the occurrence of a compensable accident and that his medical complaints were causally related to the accident.
 

 A claimant in a workers’ compensation action must establish “personal injury by accident arising out of and in the course of his | inemployment.” La. R.S. 23:1081(A). An accident is “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). An employee may prove by his or her testimony alone that an unwitnessed accident occurred arising out of and in the course of employment if the employee can satisfy two elements: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged accident.
 
 Bruno v. Harbert Intern. Inc.,
 
 593 So.2d 357 (La.1992).
 

 A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is claimed.
 
 Peveto v. WHC Contractors,
 
 93-1402 (La.1/14/94), 630 So.2d 689;
 
 Hatfield v. Amethyst Const., Inc.,
 
 43,588 (La.App.2d Cir.12/3/08), 999 So.2d 133,
 
 writ denied,
 
 2008-2996 (La.2/13/09), 999 So.2d 1150. The preexisting condition is presumed to have been aggravated by the accident if the employee proves: (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the activation of the disabling condition.
 
 Peveto, supra.
 

 | ] iDombrowski was examined by Dr. Thomas Donner on November 19, 2002, on a referral for lumbar disc surgery. Dom-browski’s chief complaint at the time was right lower extremity pain. He told Dr. Donner that he had a laminectomy in 1995 for right lower extremity pain that was identical to the pain he was experiencing in
 
 *315
 
 2002. He also told Dr. Donner that he had recovered after the 1995 surgery to the point where he could return to work in a heavy-duty capacity, but had re-injured his back in 2002 while working in Indonesia. An MRI of the lumbar spine showed an acute disc herniation at L4-5 to the right of midline resulting in nerve root compression. Dr. Donner’s impression was right L5 radiculopathy.
 

 Dr. Donner examined Dombrowski following a lumbar laminectomy the next month. Dombrowski reported that his leg symptoms were minimal, and that his back was considerably better.
 

 Dr. Donner performed a surgical re-exploration of the prior laminectomy site on March 14, 2007. It was noted at the time of admission that Dombrowski was complaining only of right lower extremity pain. When Dr. Donner examined Dom-browski later that month, Dombrowski reported having a little bit of numbness in his leg and some very mild intermittent sciatica, but otherwise his leg felt markedly improved.
 

 When Dr. Donner examined Dombrow-ski on April 23, 2007, he was without complaints, and stated that he felt quite well other than having a minimal ache in his back. Two months later, Dombrowski told Dr. Donner that he was doing well and had a little bit of achiness, but nothing that was | ^particularly severe. He reported that one pain pill a day kept his pain under control.
 

 Dombrowski was examined by Dr. Michael Haydel on June 25, 2007. Dr. Hay-del is board certified in pain management. Dombrowski’s chief complaint was right hip pain with numbness. Dombrowski gave a history of a work-related accident in 2002 that caused burning and stabbing pain to the mid lower back that extended to the right lower extremity and right hip with associated numbness. Dr. Haydel noted that Dombrowski said he had nearly complete relief following surgery in August of 2004.
 

 On July 31, 2007, Dombrowski was examined by Dr. Forte for the first time on a referral from Dr. Haydel. Dombrowski’s chief complaints were low back pain and right leg pain extending down the leg and into his foot. He said the leg pain was worse than the back pain. He also said the pain was constant, and he characterized it as numbness in the foot and burning pain. Dombrowski rated his pain as 6/10.
 

 On that first visit, Dombrowski gave a lengthy history of back pain, right leg pain, and five prior lumbar surgeries. The surgeries occurred in 1992, twice in 2002, 2003,
 
 [2]
 
 and in March of 2007. Dr. Forte’s impressions included low back pain with right lumbosacral radiculopathy.
 

 After that first visit, Dombrowski was usually either examined by Dr. Forte or had a medication review at Louisiana Pain Care once a month. Initially, Dombrowski rated his pain in the range of 6/10 to 7/10. He was 1 lsalso taking Vicodin three to four times a day. In November of 2007, he began reporting that his leg pain was worse than his back pain.
 

 For the medication review conducted on February 13, 2008, Dombrowski reported that his pain always interfered with general activity and sleep, and frequently interfered with his mood, walking ability, normal work routine, relationships, enjoyment of life, and appetite.
 

 Dombrowski told Dr. Forte in April of 2008 that he felt his pain was under good control and that he was able to maintain an active lifestyle. Dombrowski rated his
 
 *316
 
 pain as 5/10. He rated his pain as 3/10 at a medication review the next month.
 

 Dr. Forte was told by Dombrowski in July of 2008 that he had been doing better since his last visit. He was taking Vicodin less frequently, two to three times a day instead of three to four times, so Dr. Forte reduced his Vicodin dosage to twice a day with an occasional extra one for days when his pain was more severe. Dombrowski continued to complain of back pain and right leg pain, which were worse when he was active, but his medications allowed him to function at a higher level.
 

 Dr. Forte noted in December of 2008 that the reduction in the Vicodin dosage appeared to be working for Dombrowski, who reported that he had good and bad days regarding his pain. Dombrowski rated his pain as 4/10.
 

 Dombrowski told Dr. Forte in March of 2009 that Vicodin two to three times per day had significantly reduced his pain. Dombrowski presented at that time with a primary complaint of low back pain greater than leg pain. He rated his pain as 4/10. Dombrowski continued to __[i¡complain of low back and right lower extremity pain when he saw Dr. Forte the following month. He had ceased taking Neurotonin because he felt it did not significantly reduce his pain, but he was still taking one to three Vicodin pills per day. He rated his pain as 3/10.
 

 Dombrowski had a medication review at Louisiana Pain Care on May 20, 2009, eight days before the accident. He rated his pain as 5/10. It was noted that his pain rarely interfered with his walking ability, normal work routine, and appetite. It was also noted that his pain frequently interfered with his general activity, mood, relationships, sleep, and enjoyment of life.
 

 Dombrowski described his condition to the Work Kare doctor on May 28 as being similar to symptoms he had piior to a 2002 laminectomy around L4-5, as at that time he had some pain radiating down his right leg to his foot with some numbness and tingling that resolved after the laminecto-my.
 

 Dr. Forte examined Dombrowski for the first time after the accident on June 4, 2009. Dombrowski gave Dr. Forte a history of the accident, stating that he was picking up something heavy when he felt a sharp pop in his back with sharp pain radiating into both buttocks and posterior thighs as well as worsening numbness and tingling that radiated down his right leg into the entire right foot. He also had some occasional tingling in the left posteii- or thigh. The pain had been fairly constant since its onset. Dombrowski reported that a shot of Toradol at Work Kai'e had not helped, and he had to take moi'e Vicodin pills than usual. He rated his current pain as 6/10. Dombrowski received a Toradol injection, and Dr. Forte changed his pain medication from Vicodin to the slightly stronger Lorcet. Dx*. | ^Forte’s impression was recent exacerbation of low back pain with light lumbo-sacral radiculopathy. He recommended a new lumbar MRI and possibly right L5 epidural steroid injections. Dr. Forte wrote a note that Dombrowski would be able to return to work on June 22.
 

 An MRI of the lumbar spine taken on June 10 showed, among other findings, disc herniation at L4-5 toward the right, evidence of a laminectomy at L5 on the light, and postoperative changes to the right lateral spinal canal at L5-S1.
 

 Dr. Foi'te next examined Dombrowski on June 17, 2009. He continued to complain of back pain and right leg pain with numbness extending into the right foot. Dombrowski reported that the pain was worse when he bent forward and picked up any object, and he rated his pain as 7/10.
 
 *317
 
 Dr. Forte’s impression was low back pain with lower extremity radiculopathy with MRI evidence of disc herniation at L4-5 on the right. Dr. Forte wanted to schedule Dombrowski for right L4 and L5 epidural steroid injections, and depending on his response, possibly doing a series of them. Dr. Forte wrote a note that Dom-browski was unable to return to work in his present condition, and that he would be evaluated again after the completion of his injections in a month. The procedure was cancelled when Patterson’s insurer would not authorize the treatment.
 

 Dombrowski continued with basically the same complaints of back pain radiating down his right leg and numbness in his right foot in subsequent examinations by Dr. Forte. He consistently rated his pain in the range of 6/10 to 7/10. He reported that his pain not only worsened when he 1 ifibent forward and picked up any type of object, but also when he walked, stood in any one position for an extended period of time, or first arose from a seated position.
 

 Although Dombrowski told Dr. Forte in January of 2010 that his low back and right leg pain was constant and he rated his pain as 6/10, he also thought his pain was slowly resolving back to normal. He told Dr. Forte that he recently exacerbated his pain while walking 2.5 miles.
 

 When asked to describe the difference in his condition before and after the accident, Dombrowski replied that he had mild pain from time to time, but it was not constant, as severe, or with the numbness that he was experiencing at the time of trial. Although he was not completely well before the accident, he thought his condition was improving. He also felt his condition has been worse since the accident.
 

 Dombrowski’s pain medication had been reduced prior to the accident. After the accident, he was prescribed the stronger Lorcet for his pain. Dr. Forte also recommended epidural steroid injections after the accident. It was hoped the injections would reduce his need for pain medications.
 

 Dr. Forte performed musculoskeletal physical exams when he treated Dombrow-ski. For the exam on the last visit before the accident, Dr. Forte noted that flexion and extension were mildly positive for low back pain. The seated straight leg test was positive on the right for radicular complaints. Dombrowski had positive quadrant loading with rotation to the right. When the exam was performed on June 4, the seated straight leg test |17was again positive on the right. However, Dr. Forte also noted there was quite a bit of guarding with flexion and extension, and there was some lumbar paraspinous tenderness. Dr. Forte stated this guarding indicated that Dombrowski may have been in increased pain. Dr. Forte also noted that Dombrowski’s gait was stiff, and he stood slightly forward flexed.
 

 The June 2009 MRI showed disc herniation at L4-5 to the right. Dr. Forte stated that it was possible that the disc had healed because of treatment, then had become reherniated, but there was no way for him to tell whether it was the original herniation or a reherniation.
 

 Dr. Forte testified that because Dom-browski appeared to have some neurological changes, and certainly had a worsening of complaints, it was prudent to take him at his word that some sort of event had occurred to cause the changes in his condition.
 

 Dombrowski provided a consistent description of the accident to his employer as well as to those providing medical treatment to him. Although he was suffering from a back condition prior to the accident, it obviously did not affect his ability to perform his heavy-duty job as he was giv
 
 *318
 
 en two promotions within a short period. He also agreed to work in a lower position on another rig instead of receiving unemployment compensation when his rig shut down. After the accident, he was unable to perform his job. The WCJ thought that Dombrowski gave very persuasive testimony regarding the occurrence of his injury. The WCJ also found Dombrowski to be very credible, and concluded that the medical evidence following the accident supported his contention of a disabling injury.
 

 | lsBased upon our review of this record we cannot conclude that the WCJ was clearly wrong in finding that Dombrowski established the occurrence of a compensa-ble accident and that his medical complaints were causally related to the accident.
 

 Penalties and attorney fees
 

 Finally, Patterson argues on appeal that the WCJ was manifestly erroneous in assessing penalties and attorney fees against it. Dombrowski has answered the appeal seeking additional attorney fees for work performed on this appeal.
 

 La. R.S. 28:1201(F) provides for the assessment of penalties and attorney fees based on an employer’s failure to provide payment of benefits unless the claim is reasonably controverted or the failure to pay results from conditions over which the employer had no control.
 

 In order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base the denial of benefits.
 
 Koenig v. Christus Schumpert Health System,
 
 44,244 (La.App.2d Cir.5/13/09), 12 So.3d 1037;
 
 Howard v. Holyfield Construction, Inc.,
 
 38,728 (La.App.2d Cir.7/14/04), 878 So.2d 875,
 
 writ denied,
 
 2004-2303 (La.1/7/05), 891 So.2d 684.
 

 Penalties are
 
 stricti juris
 
 and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay.
 
 Young v. Christus Schumpert Medical Center,
 
 39,593 (La.App.2d Cir.5/11/05), 902 So.2d 1180;
 
 Lee v. Schumpert,
 
 36,733 (La.App.2d Cir.1/29/03), 836 So.2d 1214. Nevertheless, a WCJ has great discretion in 1 ^awarding or denying penalties and attorney fees.
 
 Nowlin v. Breck Const. Co.,
 
 30,622 (La.App.2d Cir.6/24/98), 715 So.2d 112.
 

 At trial, Patterson’s counsel was asked whether Patterson was relying on Dom-browski’s failure to tell his doctors about the ER visit as the basis for its denial of his claim. Counsel replied that when the claim was originally denied, it was because the adjuster thought there could not have been an accident if Dombrowski was being treated as normal by Dr. Forte. It was not until later that Patterson and its insurer became aware of the controversial ER visit. However, regardless of the asserted basis for the denial, Patterson lacked a valid reason to deny the claim in light of Dombrowski’s work history with Patterson, his treatment history, and Dr. Forte’s deposition testimony. The WCJ did not abuse her discretion in assessing penalties totaling $4,000 or in awarding attorney fees of $10,000. We increase the award of attorney fees by $3,000 for defending this appeal.
 

 CONCLUSION
 

 At appellant’s costs, the judgment is modified to increase the award of attorney fees to $13,000. As modified, the judgment is AFFIRMED.
 

 [1]
 

 . Dombrowski’s earliest medical records introduced in this proceeding relate back to 2002 and refer to a back surgery in 1995.
 

 [2]
 

 . We recognize that Dombrowski told Dr. Haydel about a 2004 surgery.