GASKINS, J.
liThe plaintiff, Henry Brandon, appeals from a decision by a workers’ compensation judge (WCJ) finding that the plaintiff failed to prove that he had an accident in the course of and arising out of his employment. For the following reasons, we reverse and remand for further proceedings.
FACTS
Mr. Brandon was a supervisor on the final assembly line at the General Motors (GM) Plant in Shreveport.[1] The plaintiff had worked for GM for approximately 32 years at the time of the alleged accident. He had an extensive history of prior injuries and illnesses. In 1999, he was injured in a fall down some stairs. In 2004, he was injured in an automobile accident and began treatment with Dr. Pierce Nunley, an orthopedic surgeon, for neck and back pain. In January 2010, Mr. Brandon had thyroid surgery and in February 2010, he began seeing Dr. Suresh Kumar, a neurologist, for treatment of migraine headaches and neck pain. In April 2010, Mr. Brandon returned to Dr. Nunley complaining of an increase in back pain. He was placed on a physical therapy regimen and a spinal injection was scheduled. Mr. Brandon was *457 off work from January to June 2010, and had only been back at work for a few days when the alleged accident occurred.
According to Mr. Brandon, on June 8, 2010, he was walking along the vehicle line at GM where vehicles are inspected before being shipped out of the plant. He was looking for a particular vehicle that needed to be shipped. As he was walking, he claims that a coworker, Yvonne Baudoin, | gbacked up in a pickup truck and hit him on the right side of his body. He said that he was not knocked to the ground, but was pushed back a little bit. He put his hand inside the tailgate and beat on the truck to alert Ms. Baudoin that she had hit him. She stopped and they had a conversation.
Mr. Brandon’s supervisor, Mike Clemons, came to investigate. Mr. Brandon told Mr. Clemons that he felt all right. Later that day, Hosea Hester, Mr. Clemons’ supervisor, inquired as to whether Mr. Brandon was injured. Mr. Brandon denied any injury. Mr. Hester told Mr. Brandon to go to the company nurse and write a report.
Mr. Brandon went to the company nurse, Cheryl Andrews Morris.[2] He told her that he had pain on the right side and the right rib cage. Mr. Brandon stated that the impact occurred between the pelvis and hip.
According to Mr. Brandon, later in the day, he began to feel stiff and sore. When he reported for work the next morning, Mr. Brandon told Mr. Clemons that he was in pain and needed to go to the doctor. Mr. Brandon went to Dr. Nunley who continued Mr. Brandon’s physical therapy. He already had a nerve root block injection scheduled when the work incident occurred. The spinal injection was given as scheduled on June 11, 2010. According to Mr. Brandon, his pain did not improve and he had back surgery on August 24, 2010. Mr. Brandon had a fusion at the L4-5 and L5-S1 levels.
Mr. Brandon filed a disputed claim for compensation seeking weekly indemnity benefits, reimbursement for medical costs, and attorney fees and [ ¡¡penalties. The plaintiffs claim for workers’ compensation benefits was denied. A hearing on the matter was held on January 3, 2011.
Jacoby Marshall, a 20-year-old intern who worked at GM in the summer of 2010, testified that he witnessed the accident. He stated that he saw Ms. Baudoin put a truck into reverse and accidentally back into Mr. Brandon. He said that Mr. Brandon was pushed back a little, but was not knocked to the ground. Mr. Marshall stated that Mr. Brandon struck the truck with his hand and Ms. Baudoin stopped the vehicle. According to Mr. Marshall, Mr. Brandon rubbed his leg where he was hit by the truck. Mr. Brandon and Ms. Baudoin had a conversation, but Mr. Marshall did not hear what they said. Ms. Baudoin asked Mr. Marshall if she hit Mr. Brandon and Mr. Marshall told her that she did. Mr. Marshall gave a written statement on the day of the accident setting forth what he saw.
Ms. Baudoin, the operator of the truck that allegedly hit Mr. Brandon, testified that part of her job entailed driving vehicles outside the plant for shipment or to a point in the plant where repairs were to be made. She stated that she followed the standard operating procedure required before moving vehicles; she looked in the rear view mirror and sounded the horn. She then backed up in the truck at a speed *458 of approximately one mile per hour. She heard Mr. Brandon bang on the truck. She stopped and talked to Mr. Brandon who asked if she was going to hit him. Ms. Baudoin stated that at first, she thought that Mr. Brandon was joking and “just blew it off.” According to Ms. Bau-doin, the plaintiff did not tell her that she had, in fact, hit him on any part of his body.
|4The unsworn written statement of another witness, Douglas McKithen, was admitted into evidence. That statement, given on July 22, 2010, is as follows:
I was standing in my paint booth polishing a box rail and I saw Henry Brandon walk by. He came back by and saw a truck backing out of the care line fit repair area and he started walking toward the truck. He then stopped for a second to see how fast the truck was backing up and then walked up to it and slapped the back of the truck. I thought he was just playing around until I heard he claimed he got hit.[3]
Mr. McKithen did not testify at trial and his statement was given more than six weeks after the accident occurred. Further, the statement admitted at the hearing was typewritten and was not signed by Mr. McKithen.
Ms. Morris, the nurse at GM, testified that Mr. Brandon came to her on June 8, 2010, after the accident, and told her that the vehicle impacted him on the right side and right rib cage. Mr. Brandon told her that he was just a little sore. He had no apparent symptoms and no discernible injuries. She offered him over-the-counter pain medication, but Mr. Brandon declined, saying that he was having a procedure later in the week and could not take any over-the-counter pain medications.
Mr. Brandon testified, outlining his prior back problems, and explaining how the accident occurred. He claimed that the pain in his back was gone before this accident, but after the accident, the back pain became so severe that he could not sit, stand, or walk for a period of time. He took physical therapy and a spinal injection; however, the pain remained. He had back surgery in August 2010. He stated that he still has problems with |finumbness in his left leg and foot. Mr. Brandon said that the accident made his neck and back problems much worse and he cannot perform his prior duties.
On cross-examination, Mr. Brandon stated that he went to Dr. Nunley in April 2010 and complained of severe low back pain that had increased over time and was significantly affecting his life and disrupting his sleep. For the week of June 1 through 5, 2010, just prior to the work incident, the plaintiffs physical therapy notes show that he complained of pain at a level of eight to nine on a scale of 10, and that walking made his pain hit 10/10 “real quick.”
Mr. Brandon had a nerve block injection on June 11, 2010, three days after this alleged accident. The injections were administered by Dr. Rama Letchuman. The plaintiff told Dr. Letchuman that he had been experiencing back pain since 1999 and his condition was aggravated in June 2010 when a truck backed into him while he was walking. The plaintiff received injections on the right and left side of L5. The injections did not ease Mr. Brandon’s pain.
Dr. Nunley testified by deposition. He stated that he first saw Mr. Brandon on *459 April 11, 2005. The plaintiff had been involved in a car accident in December 2004 and was complaining of neck and low back pain. An MRI done on March 16, 2005, prior to the plaintiffs referral to Dr. Nunley, showed a disc bulge at the L4-5 level. The plaintiff had spondylosis, which is a degenerative change, and stenosis, which is a narrowing of the space around the nerve roots. The plaintiff was treated ^conservatively with physical therapy. Mr. Branson returned to Dr. Nunley on May 25, 2005, and the conservative treatment had helped his symptoms.
Dr. Nunley did not see Mr. Brandon again until April 21, 2010. At that time, the plaintiff complained of increased back pain without additional injury. An EMG was performed on April 28, 2010, and showed no nerve damage. An MRI on April 29, 2010 showed no new findings and a mild increase in the pathology noted five years earlier. The plaintiffs pain was primarily discogenic, that is, caused by injury to the disc itself and not from any impingement on the spinal cord or nerve roots. Mr. Brandon said that he got relief from sitting. There was no indication for surgery at that point and Dr. Nunley began a course of conservative treatment for Mr. Brandon, including physical therapy.
Dr. Nunley’s notes from the plaintiffs office visit on June 18, 2010, show that Mr. Brandon stated that he had been hurt at work on June 8. The notes reflect that the plaintiff was hit by a truck that threw him about six feet and exacerbated his low back pain.[4] The plaintiff also complained of neck pain. Dr. Nunley’s notes reflect that, according to Mr. Brandon, he had not had any previous cervical complaints prior to this accident. Dr. Nunley stated in his deposition that he did not think there was enough change in Mr. Brandon’s condition to have another MRI of the plaintiffs back after the alleged accident.
|7On July 14, 2010, an MRI was done of the plaintiffs neck which showed some bulging discs. When Dr. Nunley saw Mr. Brandon on July 16, 2010, the pain in the plaintiffs neck was not as severe. His pain was primarily in his low back and was radiating into his legs occasionally. The pain had gotten worse with sitting and standing. According to Dr. Nunley, when he saw the plaintiff in July, he had a different presentation. He was sitting in a tripod position in which the patient leans forward and uses the hands to offload the weight of the back. At that point, Dr. Nunley began discussing surgery with Mr. Brandon. Dr. Nunley opined that the work incident seemed to be the inciting event that took Mr. Brandon’s chronic problem, “that was smouldering, over the edge to where surgery was necessary.”
The plaintiff agreed to have back surgery and after it was performed, he experienced nerve sensitivity in his left leg radiating into his foot. He also had a partial foot drop. After the surgery, the plaintiff was placed on a regimen of physical therapy. At his office visit with Dr. Nunley on December 1, 2010, the plaintiff listed his pain as 10 out of 10. The doctor’s notes reflect that the plaintiff was being treated for a problem caused by an on-the-job injury. Dr. Nunley noted that the plaintiff was trying to get workers’ compensation benefits. The doctor’s notes state that the plaintiff marked 10s on all of his pain scales, but appeared very relaxed, moved fairly fluidly with a mild -limp, and did not appear to be at the level of distress that he indicated.
*460 [sThe defendant obtained a second opinion from Dr. Milan Mody, an orthopedic surgeon. Dr. Mody noted that the plaintiff had been suffering from low back pain since 1999. Mr. Brandon’s preoperative x-rays and MRI were consistent with a longstanding chronic degenerative process of L4-5 and L5-S1. According to Dr. Mody, the plaintiff underwent surgery after his work-related injury, most likely as a result of an exacerbation of a chronic condition. Dr. Mody recommended a return to light or sedentary work at six months postoper-atively and then proceeding to work hardening and a return to the plaintiffs previous occupation.
On January 21, 2011, the WCJ issued written reasons for judgment, rejecting Mr. Brandon’s claims. The WCJ determined that Mr. Brandon failed to prove the occurrence of a work-related accident within the meaning of La. R.S. 23:1021(1). According to the WCJ, the evidence, other than the plaintiffs testimony, discredited Mr. Brandon’s version of the incident and indicated that he may have staged the entire event.
The WCJ stated that should its determination that no work-related accident occurred be reversed by this court, then he found that Mr. Brandon also failed to prove that his pre-existing condition was exacerbated by the alleged accident on June 8, 2010. A judgment rejecting Mr. Brandon’s demands was signed and filed on February 25, 2011. Mr. Brandon appealed.
I,.PROOF OF ACCIDENT
Mr. Brandon argues that the WCJ erred in finding that he failed to meet his burden of proving that he had an accident in the course of and arising out of his employment.
Legal Principles
An employee is entitled to workers’ compensation benefits if he received personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An “accident” is defined as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). In a workers’ compensation action, the plaintiff must establish the occurrence of a work-related accident by a preponderance of the evidence. Koenig v. Christus Schumpert Health System, 44,244 (La.App.2d Cir.5/13/09), 12 So.3d 1037.
Proof by a preponderance of the evidence is sufficient where the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Lowe v. Skyjacker Suspensions, 45,-058 (La.App.2d Cir.3/3/10), 32 So.3d 340; Player v. International Paper Company, 39,254 (La.App.2d Cir.1/28/05), 892 So.2d 781. He must establish a causal link between the work-related accident and his injury. Player v. International Paper Company, supra. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves | 10the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof. Player v. International Paper Company, supra; Millage v. Builder’s Lumber Supply Company, 38,635 (La.App.2d Cir.7/2/04), 877 So.2d 1171, writ denied, 2004-1885 (La.10/29/04), 885 So.2d 594.
The worker’s testimony alone may be sufficient to satisfy this burden, provided that two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of *461 the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Authement v. Wal-Mart, 2002-2434 (La.App. 1st Cir.9/26/03), 857 So.2d 564; Davis v. Claiborne Electric Cooperative, Inc., 45,806 (La.App.2d Cir.12/15/10), 56 So.3d 321.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 1996-2840 (La.7/1/97), 696 So.2d 551; Dombrowski v. Patterson-UTI Drilling Company, 46,249 (La.App.2d Cir.4/13/11), 63 So.3d 308. To reverse a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine that the record establishes that the |, Ending is clearly wrong. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993); Dombrowski v. Patterson-UTI Drilling Company, supra. Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State through Department of Transportation and Development, supra; Dombrowski v. Patterson-UTI Drilling Company, supra.
When there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own inferences and evaluations are as reasonable. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Koenig v. Christus Schumpert Health System, supra.
La. R.S. 23:1317 provides, in pertinent part:
The workers’ compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.
The workers’ compensation judge has the discretion to admit hearsay evidence in workers’ compensation proceedings. Such evidence can qualify as “competent evidence” provided that the evidence has some degree of | ^reliability and trustworthiness and is of the type that a reasonable person would rely on. This determination must be made on a case-by-case basis under the particular facts and circumstances. The reviewing court must evaluate the competency of the evidence under the manifest error standard. Chaisson v. Cajun Bag & Supply Co., 1997-1225 (La.3/4/98), 708 So.2d 375; Hooker v. Wal-Mart Stores, Inc., 38,244 (La.App.2d Cir.3/3/04), 867 So.2d 869; Odom v. International Paper Company, *462 31,826 (La.App.2d Cir.5/5/99), 736 So.2d 290.
Discussion
There is evidence in the record to support both parties’ positions in this matter. It appears that the WCJ based the decision that the plaintiff failed to prove an accident in the course of and arising out of the plaintiffs employment upon a determination that Mr. Brandon was not credible. The main emphasis of the WCJ’s reasoning that Mr. Brandon was not credible is based upon a misreading of the evidence presented at trial. The WCJ based his rejection of the plaintiffs claim on a physical therapy note which the WCJ misconstrued to mean that Mr. Brandon fell down some stairs in May 2010, shortly before the work incident, was injured, and failed to tell his doctors. The written reasons for judgment by the WCJ state:
More troubling still are the statements made by the claimant to his Physical Therapist in D-9-004. On May 28, 2010, ten days before his alleged work accident, he tells his PT that he has “slipped down stairs” and that his pain has increased over the last several days as indicated by the up arrow. He says, literally, “† pain over several days.”
Claimant apparently never reports his stair fall to Dr. Nunley. Instead, the claimant exaggerates the alleged work accident by telling him that the truck “threw him about 6 feet.”
11sLater in the written reasons for judgment, the WCJ concludes:
It is also clear that he had injured himself falling down stairs just prior to the alleged accident at work and that he not only did not report the fall to his treating physician, he exaggerated to him the nature of the work incident.
We note that the WCJ cites exhibit D-9-004 in support of its reasoning. That exhibit is a physical therapy note from 2005. The exhibit quoted by the WCJ is actually D-6-004, a physical therapy note from Specialists Hospital Shreveport. The note is dated May 28, 2010, and reflects a diagnosis of low back pain. The note indicates that pain has increased over several days. On the blank “PRESENT FOR” is written “ '99.” On the blank “COMMENCED AS A RESULT OF” is written, “slipped down stairs.” This exhibit supports other evidence that the plaintiffs initial problem with his back began in 1999, when he fell down some stairs. It does not show that the plaintiffs fall occurred in the days immediately preceding May 28, 2010, as concluded by the WCJ in reasons for judgment.
The correct date of the fall down the stairs is shown throughout the record. At the hearing, the defendant’s attorney asked the plaintiff the following question:
When you were seen for the initial evaluation for PT at Specialist Hospital on May 28, 2010, you reported that you had lower back pain since 1999 after you slipped down some stairs; correct?
Mr. Brandon answered, “That’s correct.”
The plaintiff told Dr. Letchuman, prior to receiving a nerve block injection, that his back pain had been present since 1999. In the second li4opinion given by Dr. Mody, he also notes that the plaintiff has had back pain since 1999.
Findings of fact are not to be reversed by an appellate court unless those findings are manifestly erroneous or clearly wrong. We find that the WCJ was manifestly erroneous and clearly wrong in finding that the plaintiff fell down stairs just prior to the accident in question. The WCJ appeared to stress this fall as a pivotal part of his decision that the plaintiff was not credible. Based upon his finding that the plaintiff was not credible, the WCJ found *463 that Mr. Brandon failed to carry his burden of proving that a work accident occurred. Because the WCJ’s credibility determination was flawed, and because credibility determinations are the province of the finder of fact, we conclude that the interest of justice will be best served by remanding the matter to the WCJ for reconsideration of the evidence and testimony without the errors discussed above. The WCJ is to reevaluate whether an accident in the course of and arising out of the plaintiffs employment occurred and if so, whether the accident aggravated a preexisting condition.
CONCLUSION
We reverse the ruling of the WCJ denying the claims of the plaintiff, Henry Brandon. We remand the matter for a determination of whether an accident in the course of and arising out of the plaintiffs employment occurred and for further proceedings. Costs in this court are assessed one-half to the plaintiff and one-half to the defendant.
REVERSED AND REMANDED.
BROWN, Chief Judge, concurs with written reasons.

. The defendant in this matter is Motors Liquidation Company, previously General Motors Corporation.

. The name of this witness is incorrectly stated in the WCJ’s written reasons for judgment as “Sherel Sanders Morris.”

. There is some inconsistency in the spelling of this witness's name. The document admitted at the hearing uses the spelling, "McKi-then.” This spelling will be used in this opinion.

. At the hearing, the plaintiff denied that the told Dr. Nunley that he was knocked back six feet. Dr. Nunley testified by deposition and was not available at the hearing for cross-examination on this issue.