BROWN, C.J.
|Jn these consolidated cases, the issues are whether claimant was terminated for *166 cause, whether he is entitled to post termination benefits and whether the Medical Director was wrong in denying his request for an invasive treatment. We reverse in part and affirm in part.

Facts and Procedural History

On June 21, 2013, James Green injured his back while working as a forklift operator for- defendant, Allied Building Stores (“ABS”). The injury occurred as Green attempted to load a heavy cabinet onto a pallet. He was taken to St. Francis Occu-Med by the safety coordinator, given Tora-dol and placed on light duty work. Green complained of pain and was allowed the rest of the day off work. Green returned to work the following Monday, June 24, but asked his supervisor to allow him to see his personal doctor, Dr. Ronald Woods, because of continued pain. ABS gave Green a fitness for duty certification form to be completed and signed by the physician. Dr. Woods gave Green a second Toradol injection. A student worker at Dr. Woods’ office gave Green the completed fitness for duty form and Green f*e-turned to work. The fitness for duty certification form from Dr. Woods indicated that Green was not to return to work until the next day, June 25, with restoictions. Green was sent home with instructions to return the following day for light duty. Later, Dr. Woods faxed a copy of the fitness for duty certification form to ABS. That form indicated that Green was to return to work the same day — Monday, June 24. ABS’s human resource director called Dr. Woods, who told her that he did not authorize any change to the form and that the correct return to work day was June 24, | ¾2013. Green claims that his supervisor called him that day to inform him of the situation, and Green offered to return to work. The supervisor told him to return to work the next day. Green showed up for work the next day and was immediately terminated due to his “falsification of the retum-to-work date.” Green denied that he had altered the form.
Green filed a disputed claim for post-termination indemnity benefits on July 12, 2013, seeking Supplemental Earnings Benefits (“SEB”) and/or Temporary Total Disability (“TTD”) benefits. Green testified that he did not work at all from June 24, 2013, to .August 8, 2014, when he obtained a,-job at Graphic Packaging. He earns more money at Graphic Packaging than at ABS.
Green continued to see. Dr. Woods who listed an “undetermined” return to work date. By. .October 2013, Green began pain management treatment with Dr. Vincent Forte, who released Green to work with a 50 lb. lifting restriction. Green attempted to find work; however, he found none until he returned to the work force on August 8, 2014, with the 50 lb. weight restriction imposed by Dr. Forte.
Trial was on October 8, 2014; the parties stipulated that the issues to be decided were whether Green was5 fired for cause and whether he was entitled to post-termination benefits. After Green presented his evidence, ABS moved for involuntary dismissal. The workers’' compensation judge (“WCJ”) found that Green changed the date of his return to work form. She determined that Green was not entitled to SEB because his inability to earn at least' 90% of his pre-injury wages was due to the falsification of the return [¡¡to duty record. Even so, before ABS presented its case, the court awarded Green TTD benefits from August 21, 2013, through August 8, 2014, when he began his new employment. Judgment was signed on October 28, 2014, and an appeal of the TTD award by ABS followed. Green answered the appeal, urging error in the denial of SEB.
Throughout the duration of Green’s injury, ABS paid-for his medical treatment. *167 As noted above, Green began a new job at Graphic Packaging on August 8, 2014. On September 28, 2014, Green presented to Dr. Bernie McHugh for a neurosurgery consultation. Dr. McHugh requested authorization for Dr. Forte to perform a lumbar discography at L3-4, L4-5, and L5-S1. Green submitted a form 1009 to the Medical Director seeking approval for the procedure on October 14,.2014. On October 22, 2014, the Medical Director denied Green’s request, finding that clinical indications and pre-conditions under the Medical Treatment Guidelines were not met.
Green appealed to the WCJ. The matter was heard on February 16, 2015. No new medical evidence was. offered, and the only exhibits entered into evidence were Green’s form 1009 and supporting documentation sent to the Medical Director, along with the order denying the claim. Green testified that his symptoms included low back pain in the middle right side, pain in his right thigh and groin, and pain going to his knee, sometimes going to his foot. Green testified that Dr. McHugh discussed surgery with him and recommended that he undergo the discography. Green testified that he wanted to undergo the surgery recommended by Dr. McHugh. He has |4had no evaluation of his mental state or mental condition since his injury. The WCJ reversed the Medical Director’s decision, noting as follows:
I find that he has been working under restriction. According to his testimony, he has continued to experience low back pain and groin pain. Also, I rely on his testimony to show that he has met the criteria for unrelenting back and/or leg pain. In reference to the psychological evaluation, according to the guidelines, specifically it states, quote, unquote, ‘When the surgeon has concerns about the relationship between the symptoms and findings or when the surgeon is aware of indications of. psychological complications or risk factors, the psychological confrontation[”j. There has not been — based on the testimony of the claimant, that is not something that the court finds that the Guidelines require in ,this case. There is nothing .to show his symptoms does not correlate with the test results, and therefore no basis for psychological testing....
[T]he testimony, of the ¡claimant indicates that he has been informed of possible surgical options. -The guidelines state ... that is sufficient.. .
So based on that, I find that the decision 'of the medical director shall be — it is hereby overturned.
The WCJ found that Green had shown “by clear and convincing evidence that the decision of the Medical Director was not in accordance” with the Medical Treatment Guidelines and reversed the denial, ordering ABS to “pay and provide for the lumbar discography.” ABS appealed this ruling as well. These appeals (50,312-WCA and 50,117-WCA) have been consolidated.

Discussion

Supplemental Earnings Benefits (SEB) (No, 50,117-WCA) ,
ABS contends that the reason that Green: .was denied SEB was that he was fired for his own misconduct: According to ABS, the facts support the forfeiture of SEB as ordered by the trial court. ABS cites Louisiana jurisprudence which holds that an employee forfeits SEB when he Lis terminated for cause. See Wiltz v. Todd’s Car Wash, 13-448 (La.App. 3d Cir.11/06/13), 126 So.3d 848, writ denied, 13-2863 (La.02/21/14), 134 So.3d 582; Bell v. Mid City Printers, Inc., 10-0818 (La.App. 4th Cir.12/22/10), 54 So.3d 1226; Synigal v. Vanguard Car Rental, 06-761 (La.App. 5th Cir.01/30/07), 951 So.2d 1197; *168 Grillette v. Alliance Compressors, 05-982 (La.App. 3d Cir.02/01/06), 923 So.2d 774.
In Resweber v. Haroil Construction Co., 94-2708, (La.09/05/95), 660 So.2d 7, 15-16, the Louisiana Supreme Court stated:
Storks admits that, as written, [La. R.S.] 23:1208 imposes no prejudice' requirement. However, Storks argues that, if read as written, the statute is too broad because it will result in the forfeiture of benefits for any false statement that is made, regardless of how inconsequential. This argument fails to recognize that the statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are willfully made for the purpose of obtaining benefits. It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose' of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.
The WCJ’s decision to impose or deny forfeiture under La. R.S.
23:1208 is a factual finding which will not be disturbed on appeal absent manifest error. Brooks v. Madison Parish Service District Hospital, 41,957 (La.App.2d Cir.03/07/07), 954 So.2d 207, writ denied, 07-0720 (La.05/18/07), 957 So.2d 155.
Green was injured in the course and scope of his employment on Friday June 21, 2013. ■ At that time, Green was sent to St Francis Occu-Med where he was treated. He returned to work that day with restrictions. ABS |^assigned Green' to light duty in accordance with the restrictions; however, ABS allowed Green to leave early because of pain. On Monday June 24, 2013, Green returned to work but requested and was allowed to leave to see his personal physician, Dr. Woods, as he was in pain. After being treated by Dr. Woods; Green returned to work. Green presented the “altered” certification that provided for him to return to work the following day, Tuesday, June • 25, 2013. Green’s supervisor recéived a fax certification from t)r. Woods’ office stating that Green could return to work with restrictions that same day, Monday, June 24. The supervisor called Green who, responded that he would immediately return to work. The supervisor told Green not to come back that day but to come in the next morning. When he reported to work that next morning, Green was terminated.
Green denied that he altered the certification form. He testified that he received the form from a student worker at Dr. Woods’ office and that it was altered in two places — one to correct his birth date and the other with the return to work date. At this time, ABS had recognizéd ah on-the-job-injury, paid all medicals, arid offered Green a job within the medical restrictions and at the same pay. Green did not refuse the offer of work.
La. R.S. 23:1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or, representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Dombrowski v. Patterson-UTI Drilling Co., 46,249 (La.App.2d Cir,04/13/11), 63 So.3d 308; Slater v. Mid-South Extrusion, 43,343 (La.App.2d Cir.08/13/08), 989 So.2d 252; Baker v. Stanley Evans Logging, 42,156 (La. *169 App.2d Cir.06/20/07), 960 So.2d 351, writ denied, 07-1817 (La.12/14/07), 970 So.2d 533. Because statutory forfeiture of. benefits under La. R.S. 23:1208 is a harsh remedy, it must be strictly construed. Risk Management Services v. Ashley, 38,431 (La.App.2d Cir.05/14/04), 873 So.2d 942, writ denied, 04-1481 (La.09/24/04), 882 So.2d 1138. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. Dombrowski, supra.
The alteration of the medical excuse dealt solely with whether Green would return to work that day or the next morning; it had nothing to do with him obtaining workers’ compensation benefits. In fact, Green was .willing to return to work on the 24th but his supervisor told him not to come to work until the. next morning. Under these circumstances, we find that the WCJ was manifestly and clearly wrong in denying SEB. Therefore, we reverse the WCJ’s judgment awarding TTD and remand for the WCJ to set SEB from August 21, 2013 (the date set by the WCJ based on Dr. Woods’ testimony) until August 8,2014.[1]
| aMedical Director’s Denial (No. 50,312-WCA)
ABS also appeals the reversal by the WCJ of the Medical Director’s denial of Green’s request for a lumbar discography after the WCJ determined by clear and convincing evidence that the Medical Director’s decision was'not in accordance with the Medical Treatment Guidelines.
Lumbar provocative discography (also reférred to as “discography” or discogram) is an invasive diagnostic procedure for evaluation for intervertebral disc pathology. It is usually reserved for persons with persistent, severe low back pain who have abnormal spaces between vertebrae on magnetic resonance imaging (MRI), where other diagnostic tests have failed to reveal clear confirmation of a suspected disc as the source of pain, and surgical intervention is being considered.
The Medical Director observed that Green did not have functionally limiting, unremitting back and/or leg pain and there was no completed psychosocial evaluation or documentation showing that Green was a surgical claimant. The, Guidelines provide that the surgery “should not be performed on patients with mild and functionally inconsequential back pain.” ■
ABS additionally argues that there is no medical documentation or testimony that Green is a surgical candidate. Defendant contends that only Green’s self-serving testimony that he had discussed the surgery with Dr.lflMcHugh is contained in the record. Further, there is no evidénce that Green was informed of the possible surgical options available.
*170 ABS also asserts that Green has not undergone a psychosocial evaluation and that .the WCJ erroneously held that a psychosocial examination was not required, in this case. ABS takes the position that the Guidelines unequivocally require a psychosocial evaluation prior to a discography.
We find that the WGJ’s ruling on the authorization of a discography is not manifestly erroneous. The history of this matter from a medical standpoint supports the conclusion that Green’s continued pain did not resolve upon conservative treatment. It wgs more than one year post-injury, on September 23, 2014, that Dr. McHugh recommended the back surgery based upon Green’s failure to respond to previous treatment. Further, Dr. Woods’ records and treatment support this recommendation. Dr. Woods treated Green conservatively for a long time and ultimately referred him to Dr. McHugh after Green failed to respond to the conservative treatment which included physical therapy. Dr. Forte, a pain care specialist, administered medication and epidural injections to Green. We conclude, as did the WCJ, that Green suffers from unrelenting low back pain with leg pain. These facts are well documented. The Guidelines also mention that these conditions should exist for greater than four months and are .not made apparent on the basis of other noninvasive imaging studies. Green has suffered for over four months, and the specific pain source was not apparent from the MRI. Thus, Dr. McHugh recommended the discogram. Green’s | ^functional limitation is that he continues under a 50-pound weight restriction. Further, the MRI failed to indicate the specific pain generator and thus the discography would test the areas to locate the pain generator.
A psychosocial evaluation is required only when the surgeon has concerns about the relationship between symptoms and findings or when the surgeon is aware of indications of psychological complications or risk factors. There is no need for such evaluation When the surgeon does not have these concerns. The WCJ fully recognized this fact.
The Medical Director’s ruling can only be overturned by a showing of clear and convincing evidence that the ruling was not in accordance with the Guidelines. Church Mutual Insurance, Co. v. Dardar, 13-2351 (La.05/07/14), 145 So.3d 271.
We agree with the WCJ that the evidence was adequate to “support every requirement of the medical guidelines in this case.” Thus, we, affirm the WCJ’s judgment in 50,312-WCA.
We reverse the WCJ’s judgment in 50,-117-WCA, and render judgment awarding claimant, James Green, Supplemental Earnings Benefits for the period from August 21, 2013, to August 8, 2014. We remand this matter to the WCJ'for the calculation of the SEB.

Conclusion

The judgment in 50,312-WCA is AFFIRMED. The judgment in 50,117-WCA is REVERSED and REMANDED.
All costs are assessed to defendant, Allied Building Stores, Inc.
CARAWAY, J., dissents with written reasons.

. Green argues that the trial judge allowed ABS, over objection, to show that Green falsified portions of his employment application nine months before the accident-in order to ‘‘better himself and get a good job.” In Re-sweber, supra at 10, the Supreme Court stated:
We therefore hold that Section 1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made willfully by a claimant for the purpose of obtaining benefits, and thus is generally applicable once an accident has. allegedly. occurred and a claim is being made. Section 1208.1, on the other hand, applies to false statements or misrepresentations made pursuant to employment-related inquiries regarding prior medical history such as in an employment application or some post-employment questionnaire and not to statements made in relation to a pending claim.